GEORGE L. SMITH, APPELLEE, v. SHERMAN R. SEVERN, APPELLANT.

FILED FEBRUARY 11, 1913.    No. 16,971.

1. Vendor and Purchaser: CONTRACT OF SALE: DELIVERY. A contract for the sale of real estate is not binding upon the vendor until it is signed and delivered to the vendee.

2. ——: ——: UNAUTHORIZED DELIVERY. A real estate agent or broker cannot bind the vendor by an unauthorized delivery of a contract for the sale of real estate.

3. ——: ——: PERFORMANCE. The delivery by the purchaser of a check or draft to the agent or broker of the vendor, payable to the order of the broker, where the contract provides for payment of money, is not a compliance with the terms of the contract.

4. ——: ——: ——. In such a case the vendor may refuse to accept the check instead of cash, and, until cash is tendered to him as payment, may decline to proceed with the proposed sale.

APPEAL from the district court for Butler county: BEN-JAMIN F. GOOD, JUDGE. *Affirmed.*

*E. C. Strode, Skiles & Harris* and *M. V. Beghtol,* for appellant.

*Arthur J. Evans, L. S. Hastings* and *E. A. Coufal,* contra.

BARNES, J.

Plaintiff brought this action in the district court for Butler county to cancel a contract for the sale of the east half of section 21, and the north half of the northwest

quarter of section 22, all in township 14, range 1 west of the sixth P. M., situated in said county. The defendant filed an answer and cross-petition, by which he prayed judgment for a specific performance of the contract. The plaintiff thereupon dismissed his petition, and by an answer and cross-bill to the defendant's cross-petition resisted specific performance, and prayed for a cancelation of the contract. The defendant filed a reply to plaintiff's cross-petition, and upon the issues thus joined a trial was had which resulted in a decree for plaintiff, and the defendant has appealed.

It appears that plaintiff listed his farm, which is the land in question, with one Earle, a real estate broker; that defendant had some negotiations with Earle in November, 1909, looking to the purchase of the land in question. The negotiations failed because of some ill feeling existing between plaintiff and defendant, and thereafter one Crumbliss, another real estate broker, obtained permission from the plaintiff to sell the land in question for $47,000. Crumbliss negotiated with the defendant for the sale of the land, and induced him to make an offer therefor of $46,000. Crumbliss then informed the plaintiff that he had such an offer, but declined to give the name of the purchaser. Plaintiff finally agreed to take $46,000, and thereupon Crumbliss and plaintiff made duplicate copies of a proposed contract, but Crumbliss at that time declined to state the purchaser's name or insert it in the contract. Crumbliss then took the duplicates to the defendant, who revised them in some respects, among which was the place of payment, and signed them as thus revised. By the terms of the contract defendant agreed to pay plaintiff $6,000 when the duplicate contracts were signed, and the balance of the consideration, amounting to $40,000, was to be paid at a bank in Ulysses on the 1st day of March, 1910, and it was agreed that upon such final payment the plaintiff was to convey the premises to the purchaser by good and sufficient warranty deed. Crumbliss then took the revised contracts to the plaintiff at his

bank in Ulysses on the morning of the 10th day of December, 1909. Plaintiff approved of the alterations made therein, and signed the contracts. At that point in the negotiations a question arose between plaintiff and Crumbliss in regard to the commission. Plaintiff said he had not seen any money on the contract, and Crumbliss replied that he had a check in his pocket for $6,000. Plaintiff thereupon told Crumbliss that he would not take Severn's check for 15 cents, and demanded cash in place of a check. It appears that plaintiff was at that time about to leave for Omaha by a train which was coming into the station, and told Crumbliss to let the matter rest until his return. He left the duplicate contracts on his desk in the bank, and started for the train. After plaintiff had left the bank, Crumbliss, without authority, took the duplicate contracts into his possession, followed plaintiff and overtook him on his way to the train. Plaintiff then told Crumbliss to return the contracts to the bank, and leave them there, and let the matter rest until he returned from Omaha. Crumbliss disobeyed plaintiff's instructions, and went to Surprise, where he saw Severn, and after consultation with him took the train to David City, and after consulting an attorney placed one of the duplicate contracts on record, in accordance with his instructions from Severn. Some days later he returned the other duplicate to plaintiff's bank, where it was placed by one Patrick in a drawer, but that fact was not brought to plaintiff's attention. The matter remained in that condition for some time, and until the plaintiff contracted with another party to sell the land, when Severn wrote to plaintiff, asking him if he had sold the land, and whether or not he was going to comply with his contract. To this communication the plaintiff made no reply. On the 2d day of April, 1910, plaintiff commenced this action, and thereafter the issues were made up by the pleadings above mentioned. The cause was tried to the court, without the intervention of a jury, and resulted in the judgment from which this appeal was taken.

Appellant's brief contains no specific assignments of error, but from his argument we infer that his contention is that the decree of which he complains is not sustained by the evidence. There is but little conflict in the testimony as contained in the record. Plaintiff and his witnesses testified that the signed contracts were left by him on his desk in his bank, with instructions to Crumbliss to let the matter rest until he returned from Omaha; that later, on his way to the train, he told Crumbliss, who had taken possession of the contracts without his consent, to return them to the bank, and let the matter await his return. This was in part denied by Crumbliss. But the great weight of the evidence sustains plaintiff's contention on this point. It therefore follows that defendant failed to prove a legal delivery of the contract.

Again, the contract provides, in express terms, that defendant was to pay plaintiff the sum of $7,000 (agreed orally to be $6,000 in cash) when the contracts were signed, and it appears, without dispute, that this money was never paid or tendered to the plaintiff. Instead of such payment or tender, defendant gave Crumbliss a check or draft payable to his order for $6,000, which plaintiff refused to accept, and demanded payment in money or cash, as stated by the witnesses. Instead of complying with that demand, Crumbliss later on cashed the check or draft, and according to his own testimony left $5,600 with a rival bank to plaintiff's credit, which all agree plaintiff refused to claim or accept. So it must be said that defendant himself failed to comply with the terms of the contract which he sought to enforce.

It is claimed, however, that Crumbliss,. as plaintiff's agent, had authority to accept defendant's check payable to himself as the first payment upon the contract, and also to take possession of the contracts and deliver one of them to the defendant. It appears, however, that Crumbliss was simply authorized to find a purchaser for the farm at a price and on terms of payment satisfactory to plaintiff; and the evidence entirely fails to support defendant's con-

tention on this point. It is strenuously insisted, however, that Crumbliss had apparent authority to perform the acts by which he sought to bind the plaintiff. It is a sufficient answer to this contention to say that, when defendant was informed that plaintiff refused to accept anything but cash for the $6,000 payment, he was sufficiently notified that Crumbliss was without any such authority as he now contends he possessed. It is therefore apparent that the district court, in refusing to compel plaintiff to specifically perform the contract in question, acted with the sound discretion vested in courts of equity to refuse a decree of specific performance unless, acting upon broad equitable grounds, he deems himself required to render such a decree.

As we view the record, the judgment of the district court is amply sustained by the evidence, and is therefore

AFFIRMED.

REESE, C. J., not sitting.