W. IRVING WILKIE, APPELLANT, V. ERNST J. BANSE ET AL., APPELLEES.

88 N. W. 2d 181

Filed February 28, 1958. No. 34280.

*Burbridge & Burbridge,* for appellant.

*Frost, Meyers & Farnham,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit in equity to enforce two written contracts, and to have the plaintiff declared to be the owner of a one-half interest in the property within the scope of such agreements, and for an accounting by the defendants of all money received by the principal defendants from sales thereof. The principal defendants denied the existence of any agreements between them and the plaintiff, and prayed for a dismissal of the suit and a judgment for costs against the plaintiff. The trial court found for the defendants and dismissed the suit. The plaintiff has appealed.

There are two alleged contracts dealing with two separate tracts of real estate within the city of Omaha involved in this suit. The descriptions of the two tracts are set out in the pleadings. For convenience we shall refer to them as the north and south tracts. The plaintiff, W. Irving Wilkie, is a licensed real estate broker residing in the city of Omaha, whom we shall subsequently refer to as Wilkie. The primary defendant, Ernst

J. Banse, was employed by Wilkie for approximately 3 years, his employment having been amicably terminated on February 15, 1956. We shall, for convenience, refer to him as Banse. Other defendants were purchasers of lots and the holders of accommodation deeds to unsold lots within the two tracts here involved. There appears to be no dispute between the principal parties to the suit as to the actual interest, if any, of the other defendants. There is therefore no issue to be determined here other than that existing between Wilkie and Banse.

Prior to February 8, 1956, Banse had some negotiations with the owner for the purchase of the north tract which consisted of about 5 acres. He had in mind the replatting and developing of this tract as a new residential area. He approached his employer, Wilkie, about joining him in the project. The discussions culminated in a meeting on February 8, 1956, during which a letter agreement was drawn up by which both were to engage in the venture on a fifty-fifty basis. Banse signed both the original and copy of the letter agreement. He asked Wilkie to sign, but the latter demurred, stating that he desired to look into it further. Banse obtained his copy of the agreement which Wilkie had not signed. Banse testified that he made repeated efforts to obtain Wilkie's signature, but that Wilkie procrastinated and did not sign on any of these occasions. Banse proceeded to close the deal for the purchase of the north tract, agreeing to build a house on one lot in the tract and deed it to the purchaser as· a consideration for the conveyance of the north tract to him. Banse proceeded to have the north tract rezoned, replatted, and graded. He contracted for the building of the house for the seller of the tract in accordance with the contract of purchase. All contracts for the needed services in developing the north tract were made by Banse and all payments thereon were also made by him.

In February 1956, Banse became interested in buying

the south tract, which consisted of approximately 5 acres adjoining the north tract on the south. Banse suggested to Wilkie that they acquire this south tract and develop it as a residential area as a joint venture on a fifty-fifty basis. Wilkie indicated that he was interested, and on or about June 20, 1956, a letter agreement was prepared. Banse signed the original and the copy of this letter agreement. The copy of the letter agreement in the possession of Banse was never signed by Wilkie.

The evidence shows that Harold W. Graham, a real estate broker, handled the sale of the south tract for the owners. He had some previous negotiations with Wilkie about this tract. In early 1956 Banse became interested in the tract. In the latter part of February Wilkie and Banse met with Graham, and a sale price was agreed upon. Graham said he dealt with Wilkie as a purchaser, and refused to split the broker's commission with Wilkie. On or about March 30, 1956, Graham advised Banse he had received the deed for the south tract from the owners and that the deal was ready for closing. Banse contacted Wilkie, who said he did not have his share of the money to close the deal and advised Banse to stall with Graham on the settlement. Graham agreed to wait until April 14, 1956. When that date arrived, Wilkie still had no money and asked Banse to stall Graham again. Graham agreed to wait until April 30, 1956. On the arrival of this date Wilkie still had no money to close the deal and Banse paid the consideration, amounting to $10,021.33. Banse and his wife were the grantees in the deed. The evidence shows that Banse employed engineers and surveyors, and entered into contracts in going ahead with the development of this tract. Contracts for grading, sewerage, water, and gas were entered into. Banse testified he had obligated himself on the two tracts to the extent of $50,000 by June 20, 1956. He said that on that date he insisted that Wilkie sign the letter agreements covering both

tracts, or that the whole deal would be off between them. Wilkie did not sign.

Wilkie testified that he signed two copies of each agreement and delivered one of each to Banse. Wilkie also testified that he did not remember the date on which he signed the copies of the agreements. There were no witnesses to the purported signing and delivery of the agreements. It is the contention of Wilkie that it was agreed the property should be held in the name of Banse and his wife and that all income and expenses were to be received and paid by Banse. The general tenor of the agreements was that the property was to be held in the name of Banse for the benefit of both Wilkie and Banse, and that each should be jointly liable for the cost of the land and all costs of abstracting, street improvement, grading, paving, taxes, etc. All money received was to be divided on a fifty-fifty basis. The agreement did not provide that Banse would do all the work, pay all the expenses, and obligate himself personally on all the contracts necessary to be made in the development of these projects. The proposed agreement was to the effect that each would pay one-half of all expenses. The evidence establishes, and Wilkie admits, that he did not contribute any money to the venture.

Banse contends that but one original and one copy was made of each of the two agreements. This does not appear to be directly disputed in the record. The stenographer who prepared the first letter agreement testified in this case. While she was not asked, she did not testify that more than one original and one copy was made. The record is clear that the copies of the agreements in the possession of Banse were neither signed nor authorized to be signed by Wilkie.

The evidence shows that lots began to sell in this replatted area during the early spring and summer of 1956. During the late summer it appeared that the lots were going to sell to advantage and that the venture

would become a financial success. On September 20, 1956, this suit was commenced.

We are required under rules of law, often stated, to try the case de novo in this court. There are irreconcilable conflicts in the evidence of Wilkie and Banse in this case. In such instances this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than another. Sofio v. Glissmann, 156 Neb. 610, 57 N. W. 2d 176. Applying this rule, we conclude from all the evidence that the plaintiff failed to make a case.

Briefly stated, the evidence shows that Wilkie and Banse carried on negotiations among themselves to develop the two tracts of real estate as a joint venture. Written contracts were contemplated and letter agreements were prepared which were signed by Banse. Wilkie procrastinated about signing. The evidence sustains a finding that Wilkie did not sign the agreements until it appeared that the venture was a financial success. He put nothing into the venture as required by the agreements. The record fails to show that Wilkie signed and delivered any instrument obligating himself in the venture. The evidence does not reveal that there was ever a meeting of the minds of the parties. It fails to show an acceptance of the proposed letter agreements on the part of Wilkie. The evidence sustains a finding that Wilkie procrastinated and refused to sign the agreements during the period when the financial success of the venture was uncertain, and sought to accept the benefits only when its financial success was assured.

A party who seeks to compel performance of a written contract, and demands an accounting of the profits alleged to have accrued therefrom, has the burden of proving the contract and that he performed in accordance with its terms. Sopcich v. Tangeman, 153 Neb.

506, 45 N. W. 2d 478; Sofio v. Glissmann, *supra*. It is elementary law that in order to prove an express contract, a definite offer, and an unconditional and absolute acceptance thereof, must be shown. Beskas v. Calkins, 135 Neb. 323, 281 N. W. 29; Griggs v. Oak, 164 Neb. 296, 82 N. W. 2d 410. Mutuality of obligation is an essential element of the right to enforce a contract in a court of equity. Herrin v. Johnson Cashway Lumber Co., 153 Neb. 693, 46 N. W. 2d 111. An offer does not ripen into a contract unless accepted, and if the offeree does not accept the offer within a reasonable time it may be treated as rejected. Where the offer requires a promise on the part of the offeree, a communicated acceptance is essential. Standard Oil Co. v. O'Hare, 126 Neb. 11, 252 N. W. 398. A party seeking to enforce an alleged contract must not only prove the agreement but must also prove that he has substantially complied with its terms. He will not ordinarily be permitted to withhold his acceptance, or to violate the contract until the risk of loss in the object of the agreement has passed, and then to belatedly assert rights in it when its financial success appears to be assured. In the instant case it is not shown that Wilkie accepted Banse's offer within a reasonable time. In fact, it is not shown that the offer was ever accepted other than the vague evidence of Wilkie that he signed the letter agreements and delivered copies to Banse on a date that he does not remember.

After a consideration of the rules of law herein announced, we conclude that the offers of Banse in the form of letter agreements directed to Wilkie to enter into a joint venture for the development of the two tracts of real estate for residential purposes were not accepted by Wilkie within a reasonable time, if at all. Consequently Banse could properly treat the offers as rejected.

The findings of the trial court are in accord with the findings of this court. The judgment of the district

court dismissing plaintiff's cause of action is therefore affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.