AGNES T. FAIRCHILD, APPELLEE, v. ORVILLE H. FAIRCHILD
ET AL., APPELLANTS.

125 N. W. 2d 191

Filed December 13, 1963. No. 35505.

Baskins & Baskins and Arthur R. Johnson, for appellants.

William P. Mueller and Frank B. Morrison, Jr., for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action for specific performance brought by Agnes T. Fairchild, the plaintiff, against Orville H. Fairchild and Vida E. Fairchild, the defendants. The trial court found generally for the plaintiff and granted the relief requested. The defendants' motion for new trial was overruled and they have appealed.

Howard E. Fairchild died April 28, 1961. He was survived by the plaintiff, his widow, and Orville H. Fairchild, a son. Orville is a stepson of the plaintiff. Vida E. Fairchild is the wife of Orville. Upon the death of Howard E. Fairchild, the plaintiff and Orville succeeded to interests in land in Keith, Garden, and Morrill Counties, Nebraska.

On January 18, 1962, the plaintiff and Orville met at the office of the plaintiff's attorney in Ogallala, Nebraska. Both parties were represented by lawyers at this meeting. The purpose of the meeting was to discuss and negotiate a contract for the exchange of property interests. No agreement was reached at this meeting but the parties agreed to return on January 24, 1962, for another meeting.

On January 24, 1962, the plaintiff and Orville again

met at Ogallala, Nebraska. After further discussion an agreement was reached. A stenographer was called into the meeting and a contract was dictated in the presence of the plaintiff and Orville by their lawyers. The contract was then transcribed and, on the same day, was signed and acknowledged by the plaintiff and Orville. One copy was taken by the plaintiff. Another copy was taken by the attorney for Orville. The three remaining copies were taken by Orville so that they could be mailed to Vida in California. The remaining copies of the contract were signed and acknowledged by Vida in California on January 29, 1962, and then returned to Orville by mail.

The contract which was prepared on January 24, 1962, provided generally for the transfer of the plaintiff's interests in the Morrill County land to Orville; the transfer of Orville's interest in two school land leases and in the Keith and Garden County land to the plaintiff; and for the payment of $33,760.68 to the plaintiff. There were other provisions concerning mineral rights, a tract which was to be held jointly, crops then growing upon the land, taxes, revenue stamps, abstracts of title, water rights, and personal property then upon the land. The contract also provided that Orville would apply immediately for a Federal Land Bank loan upon the Morrill County land. When the loan funds became available the $33,760.68 was to be paid to the plaintiff, and the parties were to exchange deeds and assign the school land leases.

On February 9, 1962, the plaintiff and Orville met at the office of John Ross, a representative of the Federal Land Bank, in Oshkosh, Nebraska. The plaintiff's attorney asked Orville if Vida had signed the contract, and Orville said that she had. The plaintiff's attorney then asked if he could have a copy of the contract. Orville handed a copy of the contract to the plaintiff's attorney who examined it to ascertain that it had been signed and acknowledged by Vida. The contract was

then handed to the plaintiff. who examined it and returned it to her attorney. The contract was then laid upon the table in front of Ross.

The purpose of the meeting on February 9, 1962, was to complete the transaction. At that time the contract had been signed and acknowledged by all of the parties and the loan application had been approved. It became apparent that the transaction could not be completed that day because of the absence of Vida. During the meeting Orville called Vida and advised her that it would be necessary for her to return to Nebraska to complete the transaction. During the conversation it was decided that Orville would go to California and bring Vida back to Nebraska. The parties agreed to meet at the Ross office again on February 15, 1962.

The meeting that had been planned for February 15, 1962, was postponed until February 26, 1962. On February 25, 1962, one of the lawyers representing the defendants notified the plaintiff's attorney that the defendants did not intend to perform the contract. This action followed.

An express contract is proved by evidence of a definite offer and an unconditional acceptance. Where the offer requires a promise on the part of the offeree, a communicated acceptance is essential. Wilkie v. Banse, 166 Neb. 138, 88 N. W. 2d 181. When one party sends a contract which he has signed by mail to a second party to be signed by the second party and returned to the sender, the deposit of the signed contract in the mail by the second party, with the proper address and postage, completes the contract. First Nat. Bank v. Ernst, 117 Neb. 34, 219 N. W. 798. See, also, Barnebey v. Barron G. Collier, Inc., 65 F. 2d 864.

The evidence in this case shows a definite offer and a communicated unconditional acceptance. When Orville advised the plaintiff and her attorney that Vida had signed the contract, the acceptance was communicated and the contract was then complete.

The defendants' theory of the case is that the contract is not enforceable because the evidence does not establish delivery. At common law, delivery was a requirement of a sealed contract and it is generally considered to be an element of a "formal" contract. Restatement, Contracts, § 95, p. 115. See, also, 1 Williston on Contracts (3d Ed.), § 205, p. 765; 1A Corbin on Contracts, § 244, p. 399. Delivery is an element of certain instruments, such as deeds and negotiable instruments, but it is not generally considered to be an element of a simple or "informal" contract.

In this jurisdiction delivery means an intention that the instrument be effective at once. Smith v. Black, 143 Neb. 244, 9 N. W. 2d 193. In that respect parties may contract subject to a condition precedent by agreeing that their contract shall not become effective until the happening of a specified event or condition. There is no contention that the contract in this case was made subject to a condition precedent and there is no evidence that the parties intended that it should be.

The defendants offered the testimony of Orville to the effect that he did not intend to place the contract beyond his control when he handed it to the plaintiff's attorney at the meeting on February 9, 1962. If the purpose of this evidence was to show that on that date Orville did not intend that the contract was to be effective, it was an attempt to prove a secret intention. Nothing which Orville said or did expressed or manifested such an intention. It is the expressed intention of the parties which they manifest by their words and acts which is controlling.

From our examination of the record we conclude that the contract is enforceable and that the plaintiff is entitled to the relief requested. The judgment of the district court is, therefore, affirmed.

AFFIRMED.