LAWRENCE PRIBIL, APPELLEE, V. BERTHA RUTHER ET AL., APPELLANTS, IMPLEADED WITH MARY C. MURPHY ET AL., APPELLEES.

262 N. W. 2d 460

Filed February 22, 1978. No. 41326.

Vincent J. Kirby, for appellants.

William W. Griffin and Deutsch, Jewell, Otte, Gatz, Collins & Domina, for appellee Pribil.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

This is an appeal in an action for specific performance of a real estate contract. The defendant Bertha Ruther owns a quarter section of land in Holt County, Nebraska. The defendant listed this property for sale with John Thor, a real estate broker, on January 20, 1976.

On April 12, 1976, the plaintiff Lawrence Pribil executed a written offer to purchase the property for $68,000. The offer to purchase was on a form known as a Uniform Purchase Agreement which included a

space for a written acceptance of the offer. The defendant and her husband signed the acceptance on the same day and handed an executed copy of the agreement to Thor for delivery to the plaintiff.

Thor returned to his office in Norfolk, Nebraska, and asked an office employee, Mrs. Kasebaum, to send a copy of the agreement to the plaintiff. Mrs. Kasebaum wrote a letter to the plaintiff, dated April 14, 1976, with a copy of the agreement enclosed, which was sent to the plaintiff by certified mail. The letter was postmarked "April 15, 1976 P.M." and was received by the plaintiff on April 16, 1976.

The defendant became dissatisfied with the transaction the day after she had signed the acceptance when she discovered a test well had been drilled on the property at the plaintiff's request and the driller had estimated a well would produce 500 to 800 gallons of water per minute. The defendant testified that she called the plaintiff's home at about 5 p.m., on April 13, 1976, and told the plaintiff's wife that she, the defendant, would not sell the property. The plaintiff's wife testified this conversation did not take place until some 10 days later, near the end of April 1976.

The defendant further testified that she called Thor the next morning, April 14, 1976, and said that she was going to "terminate the contract," because Thor had lied to her. According to Thor this conversation took place at 11:42 a.m., on April 15, 1976. Thor testified that immediately after receiving the call from the defendant he called the plaintiff and told the plaintiff that the defendant was not going to sell the farm.

The principal issue in this case is whether the defendant had effectively rejected the plaintiff's offer and revoked her acceptance of the offer before the acceptance had been communicated to the plaintiff. The trial court found that an executed copy of the purchase agreement had been sent to the plaintiff by

the defendant's agent on or before April 15, 1976, and that the plaintiff was entitled to a decree of specific performance. The defendant and her husband have appealed.

Since the plaintiff sought to enforce the contract the burden was on the plaintiff to establish that there was a contract. A party who seeks to compel specific performance of a written contract has the burden of proving the contract. Wilkie v. Banse, 166 Neb. 138, 88 N. W. 2d 181.

An express contract is proved by evidence of a definite offer and unconditional acceptance. Where the offer requires a promise on the part of the offeree, a communicated acceptance is essential. Fairchild v. Fairchild, 176 Neb. 95, 125 N. W. 2d 191; 1 Williston on Contracts (3d Ed.), § 23, p. 51, § 70, p. 230.

The signing of the acceptance on the Uniform Purchase Agreement by the defendant did not make the contract effective. It was necessary that there be some communication of the acceptance to the plaintiff. There must be some irrevocable element such as depositing the acceptance in the mail so that it is placed beyond the power or control of the sender before the acceptance becomes effective and the contract is made. Northwest Thresher Co. v. Kubicek, 82 Neb. 485, 118 N. W. 94. Delivery to the agent of the defendant was not delivery to the plaintiff and did not put the acceptance beyond the control of the defendant. See Smith v. Severn, 93 Neb. 148, 139 N. W. 858.

The plaintiff contends that the deposit of the acceptance in the mail satisfied the requirement that the acceptance be communicated. Where transmission by mail is authorized, the deposit of the signed agreement in the mail with the proper address and postage will complete the contract. Fairchild v. Fairchild, *supra*; Corcoran v. Leon's Inc., 126 Neb. 149, 252 N. W. 819. The difficulty in this case is that

there is no evidence that the acceptance was deposited in the mail before Thor called the plaintiff and informed him that the defendant would not sell the property.

The evidence is that Thor handed the purchase agreement to Mrs. Kasebaum with instructions to send a copy to the plaintiff. Mrs. Kasebaum did not testify. Thor testified, "I can't testify when she mailed it, except by reading the postmarks on the envelope and the return receipts." The postmark indicates only that the postage was canceled sometime during the afternoon of April 15, 1976. The telephone call from the defendant was received at 11:42 a.m. The call from Thor to the plaintiff was made immediately afterward.

If we assume that transmission by mail was authorized in this case, there is no evidence to show that the acceptance was deposited in the mail before the defendant's call to Thor, and Thor's call to the plaintiff notifying him that the defendant had rejected his offer. The evidence does not show that the acceptance was communicated to the plaintiff and thus became effective before the defendant changed her mind and rejected the offer.

It is unnecessary to consider the other assignments of error. The judgment of the District Court is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion herein. This appeal depends upon fact issues determined against the defendant by the trial court. I see no reason to deviate from our usual rule of affirming the judgment of the trial judge on disputed issues of fact unless he is clearly wrong. In my judgment, he was not clearly wrong in this instance.