PATRICK B. HUGHES, APPELLANT, V. CORNHUSKER CASUALTY COMPANY, APPELLEE.

456 N.W.2d 765

Filed June 29, 1990.    No. 88-658.

Steven E. Achelpohl and Stephanie W. Milone, of Schumacher & Achelpohl, for appellant.

Michael A. Fortune and J Russell Derr, of Erickson & Sederstrom, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from a judgment of the district court for Douglas County in favor of defendant, Cornhusker Casualty Company (Cornhusker), dismissing with prejudice the contract action of plaintiff, Patrick B. Hughes, for "severance pay." Hughes' petition alleged:

As a condition to the termination of his employment, and in consideration of Plaintiff's release of any claims against the Defendant arising out of the termination of his employment, the Plaintiff and Defendant agreed that Plaintiff would be paid a total amount of $22,450, equaling six months regular pay, as severance pay.

The petition further alleged the defendant subsequently "repudiated its obligation, advising the Plaintiff that the Defendant would pay only four months severance pay and would not pay any severance pay until Plaintiff returned a signed release form so limiting the said severance pay." Hughes prayed for damages, and in addition requested attorney fees and a penalty pursuant to Neb. Rev. Stat. §§ 48-1231 and 48-1232 (Reissue 1988) of the Nebraska Wage Payment and Collection Act. Cornhusker denied the above allegations and affirmatively alleged that there was no oral or written agreement to pay severance to Hughes and that any alleged obligation owed to Hughes was not wages under the Nebraska Wage Payment and Collection Act. The parties waived a jury trial, and after trial to the court, the court found generally for

the defendant and dismissed the petition with prejudice. Hughes' motion for a new trial was overruled, and this appeal was timely perfected. We affirm.

Hughes' first assignment of error states:

> The District Court erred in dismissing Appellant's action and failing to enter judgment for Appellant because the evidence disclosed a subsidiary agreement of the parties regarding payment of severance, supported by benefit or advantage to Appellee and a detriment or loss to Appellant and, therefore, there was not a total failure of consideration for the agreement.

Hughes' other assignments of error pertain to the application of the Nebraska Wage Payment and Collection Act.

The record shows the following: Hughes was employed by Cornhusker from September 24, 1984, to September 30, 1986. The parties agree Hughes was an employee at will, and there was no severance agreement prior to September 30. At trial, Hughes testified that on September 30, the chairman of Cornhusker's board of directors, Michael Frye, and plaintiff met. Frye informed Hughes that he was terminated. Hughes further testified that Frye then "offered me at that time severance pay of four months in exchange for a release." Hughes' salary was $44,900 per year, and 4 months' salary would be $14,966.67. Frye gave Hughes a release form which provided that in settlement of all amounts owed to Hughes by Cornhusker, Cornhusker would pay Hughes in the amount of $12,418.98, which amount was stated to include all accrued wages, accrued but unused vacation days, and all other amounts owing from Cornhusker. The record does not reveal how the amount of $12,418.98 was determined. Hughes responded that the offer was insufficient.

Hughes testified that in an October 2, 1986, conversation with Frye, Frye agreed that Cornhusker would pay an amount equal to 6 months' salary. The only evidence describing what was actually said in this conversation consisted of the following testimony from Hughes: "I offered to settle the severance matter for the three to six months per year of employment to which he replied that he would go to six, meaning—and it was my understanding—that he would pay six months of severance

in exchange for a release." Hughes testified on cross-examination that he understood that the payment of severance was conditioned upon the signing of a release. During the same conversation, but apparently prior to the severance discussion, Hughes offered to consult with Cornhusker on cases he was familiar with, and did subsequently assist on some cases. Hughes further testified that these services were something he offered to do and were not mentioned in the written release. According to Hughes the only unresolved term of the contract at that point was whether the payment would be made in a lump sum, in installments, or in a lump sum in 1987 for tax reasons.

Hughes' last full pay period before he was terminated ended September 28, 1986, but he received checks from Cornhusker in his regular amount for the next two biweekly pay periods. Each of these payments was in the same format, with the stub showing regular deductions for taxes, insurance, and "Sav C Match." When he did not receive any further checks, Hughes made inquiries and was told by Frye that Cornhusker would not make any further payments until Hughes signed the release. Hughes testified that he did not sign the release form given to him because it did not reflect the 6-month agreement. He stated that he told Frye over the telephone that he would sign a release stating 6 months' severance. In response to a written demand for payment from Hughes, Frye, in a letter dated January 12, 1987, stated the following:

> At the time you left Cornhusker Casualty you were offered a severance arrangement whereby you would be paid 4 months salary. This payment would be made upon your delivery of an executed release to the Company. In our previous conversations, you acknowledged that I said in response to your concerns about obtaining suitable employment, that CCC would be willing to pay you up to six months severance. Your concerns about finding suitable employment turned out (as I expected) not to be realized and the contingency aspect of our discussion is no longer an issue.
>
> Your stated expectation of receiving 6 months of compensation is not in keeping with the offer made to

you. To date, CCC does not have an executed release. The offer to you is in return for your written release, CCC will pay a total of 4 months severance pay. Enclosed is a release form. This offer will expire on January 31, 1987.

The release form with the letter did not state the specific amount of money offered by Cornhusker in exchange for the release, but referred to "the amount of money attached." The record does not show anything further in this regard. Hughes did not execute either of the releases. Hughes testified that he found suitable employment beginning November 3, 1986.

In reviewing these facts we are governed by the rule that in reviewing the trial court's judgment in an action at law tried to the court, the Supreme Court does not reweigh the evidence but, instead, considers the evidence in the light most favorable to the successful party, with conflicts resolved in favor of the successful party, who is entitled to the benefit of every inference which can be reasonably deduced from the evidence. *Preisendorf v. Mettenbrink*, 232 Neb. 558, 441 N.W.2d 203 (1989); *State v. Smith*, 231 Neb. 740, 437 N.W.2d 803 (1989).

As reflected in Hughes' first assignment of error, the parties have concentrated their debate on whether there was sufficient "benefit to the promisor" or "detriment to the promisee" to support the contract in view of the fact that no written release was ever executed. We find that the trial court may have decided the case by finding that the offer was never accepted, by either act or promise, or that even if a contract was formed, Hughes' signing of the release was a condition precedent to Cornhusker's duty to pay which was neither performed by Hughes nor excused by the actions of Cornhusker.

The expressed intention of the parties which they manifest by their words and acts, and not their secret intention, is controlling in determining the legal effect of an offer or an acceptance. See *Fairchild v. Fairchild*, 176 Neb. 95, 125 N.W.2d 191 (1963). As indicated above, Hughes' testimony does not detail much of the conversation occurring during these negotiations. Cornhusker did not put on any evidence at trial. It is difficult to discern the manifest intentions of the parties with such an incomplete and conclusory record, but the record is sufficient to support the general findings of the court in favor

of Cornhusker.

An offeror is the master of the offer and may limit the means of acceptance to the actual performance of the bargained-for act, but unless such limitation is clear, the offeree may accept by promising to perform the act. See *In re Estate of Michels*, 223 Neb. 286, 389 N.W.2d 285 (1986). If Cornhusker's offer limited the means of acceptance to the execution of a written release, then the execution and delivery of the release were necessary to provide the acceptance and consideration for the contract. Under this theory, the trial court was free to find that the offer was never accepted and there was no contract formed. This would appear to be Frye's interpretation, as indicated by his belief that the offer was revocable any time before the execution of the release.

Alternatively, if Cornhusker's offer did not clearly limit acceptance to execution and delivery of the release, the trial court could have found that the conversation between Frye and Hughes did not show such a meeting of the minds of the parties as to convert the negotiations between the parties into an agreement. Such an agreement would have to be premised on Hughes' promise to execute a release, which would have provided consideration for the contract. Hughes' testimony did not explicitly indicate that he ever accepted Frye's counteroffer to pay up to 6 months' severance by promising to sign a release. The trial court was not required to infer that Hughes so promised.

As a third alternative, the trial court may have found that even though a contract was formed, Hughes' failure to timely tender performance by executing and delivering the release excused Cornhusker's duty to pay. The trial court could have found that the disagreement between Hughes and Frye over the terms of their agreement did not result in anticipatory breach by Cornhusker which excused Hughes' performance.

Hughes' petition did not state a claim for unpaid wages, vacation pay, or consulting fees. The evidence, viewed most favorably to Cornhusker, indicates that Hughes' offer to consult was a good will gesture offered gratuitously to encourage Frye to increase Cornhusker's offer of severance. Because we find that Hughes is not entitled to recover, we need

not discuss the assignments of error relating to the Nebraska Wage Payment and Collection Act. The judgment of the district court is affirmed.

AFFIRMED.