DEAN KELLER, APPELLANT, V. CALVIN R. BONES AND
AUDREY J. BONES, TRUSTEES OF THE CALVIN R.
AND AUDREY J. BONES FAMILY TRUST, APPELLEES.

604 N.W.2d 847

Filed January 18, 2000.    No. A-99-106.

Mark R. McKeone and Robert D. Dawson, of Hart Law Office, P.C., for appellant.

Claude E. Berreckman, Jr., and Kelly L. Sudbeck, of Berreckman & Berreckman, P.C., for appellees.

HANNON and SIEVERS, Judges, and BLUE, District Judge, Retired.

HANNON, Judge.

## INTRODUCTION

The buyer of real estate sued the sellers for specific performance of an alleged contract for sale of the real estate after the sellers failed to appear at the closing. The sellers asserted that no contract existed (1) because the sellers' acceptance was not communicated to the buyer within the time specified in the offer and the attempted acceptance thus became a counteroffer and (2) because the buyer did not communicate to the sellers that he accepted their counteroffer. Both parties moved for summary judgment, and the district court for Lincoln County granted the sellers' motion, finding that no contract existed because no timely communication of acceptance by the sellers' agent to the buyer had occurred to create a binding contract. The buyer appeals, alleging that the trial court erred in (1) finding that the sellers' acceptance required communication of that acceptance to the buyer and (2) finding that the buyer did not waive the late

communication of the acceptance. We hold that (1) communication of acceptance during the time limited by the offer is necessary to create a binding contract, (2) a late acceptance constitutes a counteroffer which must be accepted, (3) the buyer did not accept the sellers' counteroffer, and (4) the doctrine of waiver cannot apply in this case. Accordingly, we find that the trial court was correct in granting a summary judgment of dismissal in the sellers' favor , and we therefore affirm.

## SUMMARY OF EVIDENCE

The material facts in this case are undisputed. Calvin R. Bones and Audrey J. Bones are the trustees of the Calvin R. and Audrey J. Bones Family Trust. The trust owns, inter alia, a ranch in Lincoln County, Nebraska, which is the subject of this dispute. On June 11, 1997, the Boneses listed the ranch for sale with a real estate agent in North Platte, Nebraska, called Agri Affiliates, Inc. (agent). According to the listing agreement between the Boneses and their agent, if the listing sold to the current tenants, Lydic Brothers, the agent would receive only a 1-percent commission. On the other hand, if the listing sold to anyone else, the agent would receive a 6-percent commission.

On July 17, 1997, Dean Keller submitted an offer to buy the ranch to the agent in the form of a "Real Estate Purchase Agreement" (offer) and made an earnest money deposit of $49,000 payable to the agent. The offer was for $490,000 and by its own terms would be withdrawn if not accepted by July 21 at 5 p.m. At 4:53 p.m. on July 21, the Boneses faxed a signed copy of the offer to their agent. Paragraph 15 of the offer states in part that "[u]pon execution by Seller, this agreement shall become a binding contract." Loren Johnson, the agent's representative, did not telephone Keller to inform him of the Boneses' acceptance until 5:12 p.m. on July 21 and did so by leaving a voice message on Keller's answering machine.

On July 22, 1997, Don Lydic, a representative of Lydic Brothers, informed the Boneses and the agent that Lydic Brothers would match Keller's offer for the ranch. The Boneses wanted to accept Don Lydic's offer and sell the ranch to Lydic Brothers. Later that same day, the agent asked Keller if he would be willing to release the Boneses from the agreement and "back

out" of the deal. Keller refused and asserted that he wanted to go forward with the sale.

The Boneses unequivocally informed Keller on December 5, 1997, that they would not sell the ranch to him. After the Boneses failed to close on December 10, 1997—the date set in the offer—Keller brought suit against the Boneses seeking specific performance and other relief. Both parties made motions for summary judgment. On January 5, 1999, the district court for Lincoln County found in favor of the Boneses' motion and dismissed the case at Keller's cost. Keller now appeals.

## ASSIGNMENTS OF ERROR

Specifically, Keller alleges that the trial court erred in (1) holding that acceptance of the offer required communication to Keller despite contrary language in the offer, (2) finding that a contract did not exist despite that Keller waived the late communication of the acceptance, (3) sustaining the Boneses' motion for summary judgment, and (4) overruling Keller's motion for summary judgment.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999).

## ANALYSIS

Essentially, this case presents one question—did a contract exist between Keller and the Boneses for the sale of the

ranch?—a question which depends on whether Keller's offer was validly accepted. If no contract existed, then granting the Boneses' summary judgment was proper, but if a contract did exist, then the district court committed error and its order must then be reversed. Keller's first two assignments of error relate to the question of whether a contract was created, and his second two assignments necessarily turn upon the answer to that question.

■■■ "A party who seeks to compel specific performance of a written contract has the burden of proving the contract." *Pribil v. Ruther*, 200 Neb. 161, 163, 262 N.W.2d 460, 462 (1978). Further, "[a]n express contract is proved by evidence of a definite offer and unconditional acceptance." *Id.* Accordingly, for the Boneses to be entitled to summary judgment, the evidence must show there is no material issue of fact on the issue of the existence of the contract. In this case, it was possible for a contract to have been formed (1) by the Boneses' timely acceptance of Keller's offer to buy or (2) by the Boneses' late acceptance constituting a counteroffer which Keller could then accept.

*Possible Contract From Boneses' Acceptance of Keller's Offer.*

Keller argues that the Boneses accepted his offer and that the contract became binding the moment the Boneses signed the offer due to the language in paragraph 15 as cited above.

■ "Where the offer requires a promise on the part of the offeree, a communicated acceptance is essential." *Pribil*, 200 Neb. at 163, 262 N.W.2d at 462. See, also, *Wilkie v. Banse*, 166 Neb. 138, 144, 88 N.W.2d 181, 185 (1958) ("[w]here the offer requires a promise on the part of the offeree, a communicated acceptance is essential"). In its most basic sense, the offer in this case was a buyer's promise to purchase real estate for a certain amount if the seller promised to sell. In this way, the present case falls under the rule articulated above so that the Boneses' acceptance must have been communicated to Keller in order for the acceptance to be valid.

We believe *Pribil* controls here because, as in *Pribil*, this case lacks an effective communication to the offeror to create a contract. In *Pribil*, the Nebraska Supreme Court addressed facts similar to this case and found that no contract existed between

the seller of real estate and the buyer who made an offer like Keller's. *Pribil* turned on the timing of the seller's communication of the acceptance. The chronology of events in *Pribil* was that the seller signed and delivered the offer to the seller's agent, then the seller called the buyer and rejected the buyer's offer, and then the seller's agent mailed the buyer's offer, which had been signed by the seller, to the buyer. *Pribil* concluded that "[t]he signing of the acceptance of the Uniform Purchase Agreement by the defendant did not make the contract effective. It was necessary that there be some communication of the acceptance to the plaintiff." 200 Neb. at 163, 262 N.W.2d at 462. Because the seller made the rejection first and before the signed offer left his control, no contract existed in that case.

The analysis in *Pribil* clearly controls the outcome of the issue in this case. Neither the Boneses' act of signing the offer, albeit before the offer expired, nor the Boneses' act of faxing a signed copy to their agent constituted the requisite "communication" to the buyer in order to form a binding contract. *Pribil* explains that acceptance cannot become effective to create a contract until some irrevocable element occurs which places the acceptance "beyond the power or control of the sender." 200 Neb. at 163, 262 N.W.2d at 462. Neither of the Boneses' actions described above fulfills this requirement, because the acceptance never left their control.

Keller argues that *Pribil v. Ruther*, 200 Neb. 161, 262 N.W.2d 460 (1978), is distinguishable, because Keller's offer included a clause which purported to make the contract binding at the moment the Boneses signed it. He also argues that parties are free to create their own terms of contracting as long as the terms do not violate public policy. In his brief, Keller spends considerable effort describing how paragraph 15 does not violate public policy. Irrespective of whether a similar clause existed in the *Pribil* offer and even in light of the parties' freedom to contract as they choose, Keller cannot escape the requirement in Nebraska contract law that acceptance must be communicated to the offeror. Furthermore, while we agree that the parties are free to create the terms of their own contract, we are considering not the terms of the parties' contract but whether the parties entered into one.

With respect to the voice message left on Keller's answering machine shortly after the deadline had passed, we find that the message could not constitute an acceptance of Keller's offer. In *Kline v. Metcalfe Construction Co.*, 148 Neb. 357, 361-62, 27 N.W.2d 383, 386 (1947), the Nebraska Supreme Court stated:

"[T]he offerer has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters which it may please him to insert in and make a part thereof, and the acceptance, to conclude the agreement, must in every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand, and, in the absence of such an acceptance, subsequent words or acts of the parties cannot create a contract."

In *Wolf v. Tastee Freez Corp.*, 172 Neb. 430, 432, 109 N.W.2d 733, 735 (1961), the court stated:

That the acceptance of an offer must be made within the time specified in the offer is a general rule of law. . . . "The power to create a contract by acceptance of an offer terminates at the time specified in the offer . . . ." We believe that under a provision specifically designating the time within which notice must be given, that time is of the essence, and such provision is to be strictly construed.

Keller's offer required that the Boneses accept in writing by 5 p.m. on July 21, 1997, through registered mail or delivering the acceptance to Keller personally. Additionally, paragraph 15 of the offer states in part, "Time is of the essence of this agreement and each and every provision hereof." The voice message left on Keller's answering machine was not in writing, occurred after the deadline, and was not delivered by the means specified in the offer; thus, it could not constitute an acceptance.

*Possible Contract Resulting From Waiver From Keller.*

The Boneses' late acceptance could constitute a counteroffer. A binding contract can result from the oral acceptance of such a counteroffer. See *Kline, supra* (holding that acceptance which imposed conditions different from offer and which was

acted upon by original offeror constituted counteroffer which was accepted); *Reynolds & Maginn v. Omaha General Iron Works*, 105 Neb. 361, 180 N.W. 584 (1920) (concluding that oral acceptance of written offer is sufficient to satisfy statute of frauds if person making offer is party charged). The Boneses' signing of the offer by Keller would constitute the written embodiment of the counteroffer, and its oral acceptance by Keller could have resulted in a contract. However, Keller does not rely upon this theory, and in any event, there was no communication from Keller to the Boneses or their agent which could be interpreted as an acceptance of any counteroffer from the Boneses.

Rather, Keller argues waiver, claiming that he was willing to go forward with the contract despite the Boneses' failure to accept within the specified time and in the specified manner. We note that in *Kline, supra,* the majority of the Nebraska Supreme Court chose to address this type of situation under an acceptance analysis rather than a waiver analysis, as the lone dissenter in that case chose. We are bound to and also agree with the majority's view that the acceptance approach is correct and that the waiver approach is not, and we add simply that in reality, the name attached to Keller's action or purported action is not significant in deciding this case. There was no communication from Keller to the Boneses or their agent which could be interpreted either as a waiver of the Boneses' failure to accept within the time specified or as an acceptance of a counteroffer.

Keller argues that he waived any objection to the timeliness of the Boneses' acceptance vis-a-vis the voice message. This result would lead to holding that the Boneses' counteroffer was deemed accepted because not specifically rejected by Keller. Notwithstanding its illogical conclusion, Keller's waiver argument cannot stand for other reasons as well.

Paragraph 3 of the offer states:

> In the event any contingency to this contract has not been eliminated or satisfied within the time limits and pursuant to the provisions hereof, Buyer may elect to waive the specific contingency by written notice of such waiver to the Seller. In the event Buyer does not waive the contingency, the contract resulting from the Seller's acceptance hereof

shall be deemed null and void and the earnest money deposit shall be returned to Buyer.

Even if Nebraska law allowed Keller to make a waiver, this provision shows that he did not even comply with the terms of his own offer in making such a waiver. The provision required Keller to notify the Boneses of any waiver in writing. The record shows no evidence of such a writing despite Keller's burden to produce one.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of the Boneses because no contract existed.

AFFIRMED.