DEAN KELLER, APPELLANT, V. CALVIN R. BONES AND AUDREY J. BONES, TRUSTEES OF THE CALVIN R. AND AUDREY J. BONES FAMILY TRUST, APPELLEES.

615 N.W. 2d 883

Filed August 11, 2000.    No. S-99-106.

Mark R. McKeone and Robert D. Dawson, of Hart Law Office, P.C., and Dennis D. King, of Smith and King, P.C., for appellant.

Claude E. Berreckman, Jr., and Kelly L. Sudbeck, of Berreckman & Berreckman, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an action for specific performance of a real estate purchase agreement brought by Dean Keller (the buyer) against Calvin R. Bones and Audrey J. Bones (the sellers). The district court for Lincoln County, Nebraska, granted the sellers' motion for summary judgment, finding that no contract existed between the parties due to the sellers' failure to communicate their acceptance within the time prescribed in the buyer's offer. The Nebraska Court of Appeals affirmed. On further review, we conclude that a binding contract was formed by the parties and, therefore, reverse.

## BACKGROUND

The following recitation of the pertinent facts is taken from the Nebraska Court of Appeals' opinion, *Keller v. Bones*, 8 Neb. App. 946, 948-49, 604 N.W.2d 847, 850 (2000):

> The material facts in this case are undisputed. Calvin R. Bones and Audrey J. Bones are the trustees of the Calvin R. and Audrey J. Bones Family Trust. The trust owns, inter alia, a ranch in Lincoln County, Nebraska, which is the subject of this dispute. On June 11, 1997, the Boneses listed the ranch for sale with a real estate agent in North

Platte, Nebraska, called Agri Affiliates, Inc. (agent). According to the listing agreement between the Boneses and their agent, if the listing sold to the current tenants, Lydic Brothers, the agent would receive only a 1-percent commission. On the other hand, if the listing sold to anyone else, the agent would receive a 6-percent commission.

On July 17, 1997, Dean Keller submitted an offer to buy the ranch to the agent in the form of a "Real Estate Purchase Agreement" (offer) and made an earnest money deposit of $49,000 payable to the agent. The offer was for $490,000 and by its own terms would be withdrawn if not accepted by July 21 at 5 p.m. At 4:53 p.m. on July 21, the Boneses faxed a signed copy of the offer to their agent. Paragraph 15 of the offer states in part that "[u]pon execution by Seller, this agreement shall become a binding contract." Loren Johnson, the agent's representative, did not telephone Keller to inform him of the Boneses' acceptance until 5:12 p.m. on July 21 and did so by leaving a voice message on Keller's answering machine.

On July 22, 1997, Don Lydic, a representative of Lydic Brothers, informed the Boneses and the agent that Lydic Brothers would match Keller's offer for the ranch. The Boneses wanted to accept Don Lydic's offer and sell the ranch to Lydic Brothers. Later that same day, the agent asked Keller if he would be willing to release the Boneses from the agreement and "back out" of the deal. Keller refused and asserted that he wanted to go forward with the sale.

The Boneses unequivocally informed Keller on December 5, 1997, that they would not sell the ranch to him. After the Boneses failed to close on December 10, 1997—the date set in the offer—Keller brought suit against the Boneses seeking specific performance and other relief.

All parties filed motions for summary judgment. On January 5, 1999, the district court entered summary judgment for the sellers, finding that no valid contract was formed because the sellers' acceptance was not communicated to the buyer until after the deadline set forth in the offer had expired. The district court therefore dismissed the buyer's petition.

The buyer appealed the judgment of dismissal to the Nebraska Court of Appeals, alleging that the trial court erred in (1) finding that the sellers' acceptance must be communicated to the buyer prior to the expiration of the offer, contrary to the language in the offer, and (2) finding that the buyer did not waive the late communication of the acceptance. The Court of Appeals affirmed, finding our decision in *Pribil v. Ruther*, 200 Neb. 161, 262 N.W.2d 460 (1978), controlling. The court noted that under *Pribil*, neither the sellers' act of signing the offer nor the act of faxing a signed copy to their agent constituted the requisite "communication" of the acceptance to the buyer to form a binding contract. The court maintained that the message left by the sellers' agent on the buyer's answering machine did not constitute the requisite communication because it was not in writing as required by the offer, was made after the 5 p.m. deadline, and was not delivered personally or by registered mail, as further required by the offer.

The Court of Appeals also determined that "[t]here was no communication from [the buyer] to the [sellers] or their agent which could be interpreted either as a waiver of the [sellers'] failure to accept within the time specified or as an acceptance of a counteroffer." *Keller v. Bones*, 8 Neb. App. 946, 953, 604 N.W.2d 847, 853 (2000). The court maintained that even if Nebraska law allowed the buyer to make a waiver, the buyer did not comply with a provision in his own offer which required waivers to be in writing. Thus, the Court of Appeals affirmed the order of the district court, finding that no contract existed between the parties.

## ASSIGNMENTS OF ERROR

In petitioning for further review, the buyer assigns, summarized and restated, that the Court of Appeals erred (1) in determining that *Pribil v. Ruther, supra*, controlled; (2) in determining that no valid contract existed between the parties; (3) in determining that an acceptance of his offer could not be governed by the language of the contract, and instead required an actual communication of the sellers' acceptance to him; (4) in determining that a valid contract between the buyer and the sellers was not created by their subsequent communications and

course of dealing with each other following the expiration of the stated deadline in the buyer's original offer; (5) in determining that no contract was formed after the buyer waived the late communication of the sellers' acceptance, or, in the alternative, that the buyer could effectuate a waiver in writing only; and (6) in affirming the district court's order granting summary judgment in favor of the sellers.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Sherrets, Smith v. MJ Optical, Inc.*, 259 Neb. 424, 610 N.W.2d 413 (2000); *Olsen v. Farm Bureau Ins. Co.*, 259 Neb. 329, 609 N.W.2d 664 (2000); *Turner v. Fehrs Neb. Tractor & Equip.*, 259 Neb. 313, 609 N.W.2d 652 (2000).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Sherrets, Smith v. MJ Optical, Inc., supra*; *Turner v. Fehrs Neb. Tractor & Equip., supra*; *Rodriguez v. Nielsen*, 259 Neb. 264, 609 N.W.2d 368 (2000); *Neill v. Hemphill*, 258 Neb. 949, 607 N.W.2d 500 (2000).

■ The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Fraternal Order of Police v. County of Douglas*, 259 Neb. 822, 612 N.W.2d 483 (2000); *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 253 Neb. 458, 571 N.W.2d 64 (1997); *McDonald's Corp. v. Goler*, 251 Neb. 934, 560 N.W.2d 458 (1997).

## ANALYSIS

The Court of Appeals determined that under *Pribil v. Ruther*, 200 Neb. 161, 262 N.W.2d 460 (1978), a communicated acceptance was required in order to form a binding contract. In *Pribil*,

we stated that "[a]n express contract is proved by evidence of a definite offer and unconditional acceptance. Where the offer requires a promise on the part of the offeree, a communicated acceptance is essential." 200 Neb. at 163, 262 N.W.2d at 462. The Court of Appeals reached its determination notwithstanding language in the offer dispensing with the notice requirement. The relevant provisions of the buyer's offer provide as follows: "12. [T]he Buyer and Seller each acknowledge that this agreement, when signed, becomes a **LEGALLY BINDING CONTRACT** . . . . 15. . . . . Buyer acknowledges that this agreement is not binding until accepted by the Seller. Upon execution by Seller, this agreement shall become a binding contract." The purchase agreement which formed the basis of the buyer's offer in *Pribil* did not contain a provision similar to that contained in the buyer's offer in this case, which provides that the agreement becomes a binding contract upon execution.

Although we have adhered to the general principle that the offeror is master of the offer, see *Hughes v. Cornhusker Cas. Co.*, 235 Neb. 656, 456 N.W.2d 765 (1990), we have never addressed the issue of whether an offer may dispense with a notice of acceptance. We note that several jurisdictions have recognized that an acceptance need not be communicated to form a binding contract where the language of the offer dispenses with this requirement. See, *Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198 (4th Cir. 1988) (stating offeror entitled to notification of acceptance unless offer indicates contrary intention); *Frandsen v. Gerstner*, 26 Utah 2d 180, 487 P.2d 697 (1971) (concluding express terms of offer may modify general rule requiring communication of acceptance); *Harleaux v. Wood*, 542 So. 2d 747 (La. App. 1989) (concluding contract became binding upon offeree's signature because by terms of offer, parties altered general rule that contract is not perfected until notice of acceptance is received); *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex. App. 1986) (stating because "notification of acceptance is required for the benefit of the person who makes the offer, the person who makes the offer may dispense with notice to himself"). See, also, 1 Arthur L. Corbin, Corbin on Contracts § 3.13 (Joseph M. Perillo rev. ed. 1993 & Cum. Supp. 2000); Restatement (Second) of Contracts § 56 (1981). But see *Kendel*

*v. Pontious*, 261 So. 2d 167 (Fla. 1972) (concluding where offer stated it would become binding upon signing by both parties, offeree was nonetheless required to communicate its acceptance).

We need not decide whether to recognize an exception to the rule requiring a communicated acceptance in this case because we find uncontroverted evidence that the sellers' acceptance was communicated to the buyer, thereby establishing a binding contract. The Court of Appeals determined that

> [the buyer's] offer required that the [the sellers] accept in writing by 5 p.m. on July 21, 1997, through registered mail or delivering the acceptance to [the buyer] personally. Additionally, paragraph 15 of the offer states in part, "Time is of the essence of this agreement and each and every provision hereof." The voice message left on [the buyer's] answering machine was not in writing, occurred after the deadline, and was not delivered by the means specified in the offer; thus, it could not constitute an acceptance.

*Keller v. Bones*, 8 Neb. App. 946, 952, 604 N.W.2d 847, 852 (2000). The terms of the buyer's offer required only that the offer be *signed* by the 5 p.m. deadline, not that it be communicated prior to that time as found by the Court of Appeals. The offer is silent with respect to the manner and time for communication of acceptance. Paragraph 4 of the offer provides that "[t]his document constitutes an offer to purchase the Property. In the event this offer is not accepted by Seller on or before July 21, 1997 at 5 o'clock p.m., this offer shall be deemed revoked and the deposit shall be refunded to Buyer." Paragraphs 12 and 15 of the offer, when read together, define "acceptance" to mean when the document is signed. Paragraph 15 provides, "Buyer acknowledges that this agreement is not binding *until accepted* by the Seller. Upon *execution* by Seller, this agreement shall become a binding contract." (Emphasis supplied.) Paragraph 12 provides, "Buyer and Seller each acknowledge that this agreement, when *signed*, becomes a **LEGALLY BINDING CONTRACT**." (Emphasis supplied.) (Emphasis in original.)

█ A contract which is written in clear and unambiguous terms is not subject to interpretation or construction; rather, the

intent of the parties must be determined from the contents of the contract, and the contract must be enforced according to its terms. *ConAgra, Inc. v. Bartlett Partnership*, 248 Neb. 933, 540 N.W.2d 333 (1995); *Schrempp and Salerno v. Gross*, 247 Neb. 685, 529 N.W.2d 764 (1995). A contract is viewed as a whole in order to construe it. *Ruble v. Reich*, 259 Neb. 658, 611 N.W.2d 844 (2000); *Bachman v. Easy Parking of America*, 252 Neb. 325, 562 N.W.2d 369 (1997).

Construing the language of the buyer's offer, we conclude that the 5 p.m. deadline applies only to the time by which the sellers were required to sign the document in order to indicate their acceptance. The sellers signed the buyer's offer at 4:53 p.m. on July 21, 1997, prior to the deadline stated in the offer. Accordingly, the sellers' acceptance was timely, leaving only the question of whether it was communicated to the buyer in an effective and timely manner.

Upon signing the buyer's offer, the sellers faxed it to their agent at 4:53 p.m. As we noted in *Pribil v. Ruther*, 200 Neb. 161, 262 N.W.2d 460 (1978), delivery to a seller's agent is not delivery to a buyer and does not put the acceptance beyond the seller's control. Consequently, the question is whether any other communication by the sellers or their agent to the buyer qualifies as notice of acceptance. See, *Corman v. Musselman*, 232 Neb. 159, 439 N.W.2d 781 (1989) (holding principal is bound by, and liable for, acts which his agent does within actual or apparent authority from principal and within scope of agent's employment); *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 371 N.W.2d 732 (1985) (same); *Bury v. Action Enterprises, Inc.*, 197 Neb. 38, 246 N.W.2d 724 (1976) (same).

The first communication between the parties occurred at 5:12 p.m. on July 21, 1997, when the sellers' agent left a voice message on the buyer's answering machine informing him that the sellers had accepted his offer. The Court of Appeals concluded that the message left on the buyer's answering machine was not a proper communication of the acceptance because it was "not in writing, occurred after the deadline, and was not delivered by the means specified in the offer." *Keller v. Bones*, 8 Neb. App. 946, 952, 604 N.W.2d 847, 852 (2000). In reaching this conclusion, the Court of Appeals was in part referring to paragraph 16

of the offer, which provides, "All notices and other communications given hereunder shall be in writing and shall be delivered personally or sent by registered mail, addressed to Buyer or Seller as below." Viewing the language of the offer as a whole, we interpret this provision as applying to all notices and other communications arising *after* the formation of a binding contract. Thus, this provision in the offer does not apply to communication of the sellers' acceptance, and as such, an oral communication of the sellers' acceptance was effective.

■ As noted, there is no language in the buyer's offer specifying the time or manner for communication of the acceptance. To the extent the offer does not speak to a time within which communication of the acceptance must be made, a reasonable time is used. See, Restatement (Second) of Contracts § 41 at 109 (1981) (stating that "[a]n offeree's power of acceptance is terminated at the time specified in the offer, or, if no time is specified, at the end of a reasonable time"); *Standard Oil Co. v. O'Hare*, 126 Neb. 11, 252 N.W. 398 (1934) (stating in case where contract did not specify time within which acceptance must be made, before offer could ripen into contract, it must be accepted, and notice of its acceptance be given to offeror within reasonable time).

Here, the sellers' agent left a message on the buyer's answering machine indicating the sellers' acceptance of the buyer's offer only 19 minutes after the sellers signed the offer and 12 minutes after the 5 p.m. signing deadline. It cannot be said that the sellers' communication of acceptance was not made within a reasonable time.

■ Moreover, the interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence. *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996). From the moment the sellers signed the purchase agreement, both they and the buyer acted in a manner consistent with the existence of a binding contract between them. For example, on July 22, 1997, the agent, at the sellers' request, telephoned the buyer to inquire whether he would "back out" of the deal, and the buyer refused to do so. Moreover, on that same day, the agent, acting

under his express authority, cashed the buyer's earnest money deposit check, which he told the buyer he would do only after the sellers had accepted his offer. Also, on July 25, the sellers sent a letter to their agent indicating their intent to have the agent disclose to the buyer, pursuant to their responsibility under the agreement, certain defects of the property. Based on these uncontroverted facts, we conclude as a matter of law that the sellers' acceptance was properly and timely communicated to the buyer so as to form a binding contract.

## CONCLUSION

For the reasons discussed above, we conclude that the Court of Appeals erred in affirming the district court's order granting summary judgment in favor of the sellers because the sellers' acceptance was timely communicated to the buyer so as to create a valid and binding contract. Therefore, we reverse the judgment of the Court of Appeals and remand the cause with directions to reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.