Henry F. **REIMANN** and Eunice W. Reimann, husband and wife, Plaintiffs,

v.

**UNITED STATES** of America,
Defendant.

No. 2237.

United States District Court
D. Idaho, E. D.

July 21, 1961.

Gordon S. Thatcher, Rigby & Thatcher, Rexburg, Idaho, for plaintiffs.

Kenneth G. Bergquist, U. S. Atty., Boise, Idaho, Rogers N. Robinson, Denver, Colo., for defendants.

TAYLOR, District Judge.

Plaintiffs, Henry F. Reimann and Eunice W. Reimann, husband and wife, own and operate a farm in Fremont County, State of Idaho, as their community property. In the fall of 1958, plaintiff Henry F. Reimann applied for and obtained a soil bank conservation reserve contract with the United States, covering all of the farm's eligible acreage. Under the terms of the contract, plaintiffs would have been entitled to a total payment of $5,951.20 for the year 1959 had they complied with the conditions stated therein. Prior to the negotiations for the contract, plaintiffs planted approximately 112 acres of wheat. Although plaintiff Henry F. Reimann was informed that unless he disced under said wheat he would be in violation of the contract in 1959, plaintiffs, nevertheless, harvested and sold the wheat in the fall of that year for $7,600. Therefore, the

County Agricultural Stabilization and Conservation Committee, and thereafter the State Committee, determined that said plaintiff was in violation of his contract. His payments for 1959 were forfeited and a civil penalty of $2,975.60 was assessed. Plaintiffs commenced this action for a trial de novo pursuant to Section 1831(d), Title 7 U.S.C.A. of the Soil Bank Act, seeking to avoid the penalty and have the contract declared void *ab initio*, or in the alternative, terminated by the Court as of the date of the violation. The United States filed a counterclaim to recover the penalty under Section 1811, Title 7 U.S.C.A.

This controversy was tried before the Court sitting without a jury on April 25, 1961. The parties waived oral argument, elected to submit briefs and the cause was taken under advisement. Several months have elapsed since the trial, but neither party has seen fit to submit a brief. Plaintiffs have chosen to rely on the authorities and arguments presented in their pre-trial brief. The record also contains a similar brief by defendant.

 The principal issue presented by plaintiffs' action and their answer to defendant's counter-claim is whether a soil bank conservation reserve contract is an encumbrance and comes within the purview of Section 32–912 of the Idaho Code. This statute provides that:

"The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered: * * * "

It has long been the settled law in the State of Idaho that a conveyance of community real estate in which the wife does not join by executing and acknowledging the instrument of conveyance is void *ab*

*initio* and unenforceable. Plaintiff Eunice W. Reimann, wife of plaintiff Henry F. Reimann, did not sign or acknowledge the contract in question. Plaintiffs contend that said contract is an encumbrance on their land and the wife's failure to join therein voids it from its inception. Inasmuch as this contention involves an alleged transfer of real estate, or some interest therein, in the State of Idaho, and a purported contract made and executed in Idaho, its laws are controlling.

The Court is unaware of any authorities, and the plaintiffs have failed to cite any, which hold that such a contract is an encumbrance. Plaintiffs argue that the contract is analogous to a lease which was held to be an encumbrance by the Supreme Court of the State of Idaho in Fargo v. Bennett, 1922, 35 Idaho 359, 206 P. 692. Plaintiffs reason that the contract was for a definite term of ten years; that it contained a definite and agreed rental, together with a time and manner of payment. They cite Gaskill v. Jacobs, 1924, 38 Idaho 795, 225 P. 499 as listing these elements as the essential requirements of a lease. Therefore, they conclude the contract is, in effect, a lease and, hence, an encumbrance.

 The definition of encumbrance that has been recognized by the Supreme Court of the State of Idaho, and most widely accepted in other jurisdictions, is:

"Every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance." Fargo v. Bennett, 1922, 35 Idaho 359, 361, 206 P. 692, 693; 42 C.J.S. pp. 549–550.

Encumbrances usually fall within two categories: (1) those which affect the title, and (2) those which affect the physical condition of the land such as an easement. 42 C.J.S. p. 551. A lease is an encumbrance because it affects the title to the land. It binds the realty and follows it into the hands of all purchasers. Ibid. A soil bank conservation reserve contract is personal, binding only the parties thereto. It does not bind subsequent owners of the land who do not become

parties to the contract. Under the terms and conditions thereof, Part V, 8(b), "loss of control of the farm by sale or otherwise by any signatory to the contract" terminates the contract as to such producer. (Exhibit No. 1). In addition, the United States acquires no interest in the land by virtue of its contract. It cannot demand possession of the land or have free enjoyment of the same. Its only recourse when any signatory fails, or partially fails, to comply with the terms and conditions of the contract is by way of a decrease or forfeiture of payments, termination of the contract and an assessment of a civil penalty in accordance with the provisions of the Soil Bank Act, 7 U.S.C.A. § 1801 et seq.

It is true, as plaintiffs point out, that the owner's use of the land included in the contract is substantially curtailed by government regulations. However, it is questionable whether such regulations constitute an interest in the land which subsists in third persons "to the diminution of the value of the land". In view of the widespread, voluntary participation in the soil bank program, its objectives and results, it is apparent that the benefits derived by such participation outweigh the detriments.

Furthermore, by virtue of the Idaho statute quoted above, the husband has the management and control of the community property. He can farm the community property as he sees fit, market the crops, receive the proceeds therefrom and spend them without his wife's consent. He may also lease the property for a period not exceeding one year without his wife joining therein. Abbl v. Morrison, 1943, 64 Idaho 489, 134 P.2d 94. In that case the Supreme Court of the State of Idaho held that such a lease was not an encumbrance within the purview of Section 32–912 of the Idaho Code, but, practically speaking, was within the husband's authority as the manager of the community property. Here too this Court believes a soil bank conservation reserve contract executed solely by the husband, plaintiff Henry F. Reimann, was within his authority as manager of the community property. He voluntarily

chose this means to receive income from and improve the community farm as an alternative to cultivating and harvesting crops. By so doing he in no way encumbered the community real property, but he did personally obligate himself as the manager of the community property to fulfill the terms of the contract.

The Court will next consider the civil penalty which the government seeks to recover by its counter-claim. Section 1811, Title 7 U.S.C.A. of the Soil Bank Act provides for such a penalty when any producer "knowingly and willfully grazes or harvests any crop from any acreage in violation of a contract". It also provides that such a penalty "shall be in addition to any amounts required to be forfeited or refunded under the provisions of such contract, and shall be recoverable in a civil suit brought in the name of the United States". This statute has been construed to the effect that a penalty is only warranted where there are sufficient grounds for termination or forfeiture of the contract. United States v. Maxwell, 8 Cir., 1960, 278 F.2d 206; White v. United States, D.C. W.D.Tenn.1959, 183 F.Supp. 591. In order to warrant a forfeiture or termination of the contract, the nature of the violation must be such "as to defeat or substantially impair the purposes of the contract". 7 U.S.C.A. § 1831(d). Plaintiffs concede that if the contract is valid, harvesting the wheat was such a violation as would justify a forfeiture or termination of the contract. The only remaining question is whether the violation was willful. This word of intent is defined by the Court in Cronk v. Benson, D.C. Colo.1960, 187 F.Supp. 4, 11 as follows:

"I believe that 'willfully', as used in the statute, means conduct marked by careless or wanton disregard of whether or not one has the right so to act. It also means an act done by one who either intentionally disregards the statute or is plainly indifferent to its requirements."

Plaintiff Henry F. Reimann testified that he planted the wheat in August of 1958. In September he contacted Gale Dayton, a member of the Fremont County ASC Committee, to inquire about participating in the soil bank program. Dayton purportedly told him that if he signed a contract and harvested the wheat in 1959, he would receive no payments for that year. Plaintiff applied for a contract and executed the same on November 24, 1958, receiving a copy thereof. (Exhibits Nos. 1, 10 and 11). The contract was approved by the County Committee in January of 1959 and the plaintiff testified he received a copy of the approved contract in May. (Exhibit No. 3). In March of that year he again had a discussion with Dayton concerning a newspaper clipping which intimated that plaintiffs might harvest their crop before the contract went into effect. (Exhibit No. 4). Plaintiff testified, however, that Dayton again told him to destroy the crop or he would not get any money. The newspaper clipping was reputed to be a misprint. Plaintiffs introduced into evidence a letter they received from the chairman of the County Committee on or about June 18, 1959. (Exhibit No. 5). Therein they were told: "The 115 acres of wheat that you agreed to disc under must be accomplished no later than July 31, 1959." Eunice W. Riemann testified that as a result of this letter she contacted the County Committee's office, inquired about it, and told Dayton that they were going to harvest the crop. She claimed she was a producer as well as her husband and that she did not sign the contract. Plaintiffs ignored the County Committee's notice and harvested the wheat. On September 11, 1959, Dayton notified plaintiff Henry F. Riemann by mail that his farm was in violation of the contract, that a civil penalty of $2,975.60 had been assessed by the County Committee, and that all of his 1959 payments were forfeited. (Exhibit No. 7). Plaintiffs requested and obtained a review by the State Committee which affirmed the determination of the County Committee. Plaintiff Henry F. Riemann testified that the first time he knew there would be a penalty was after the wheat was harvested. Apparently he believed

the only detriment he would suffer by disregarding the terms and conditions of the contract was the forfeiture of the 1959 payments. However, plaintiffs had in their possession two copies of the contract which, under Part V, 13., informed plaintiffs that if a producer willfully harvested any crop from any acreage in violation of the contract he would be subject to a penalty in addition to a forfeiture. That plaintiffs may have neglected to read the contract and were unaware of the penalty is not sufficient grounds to negate the willfulness of their conduct. Despite numerous requests to disc under their wheat or forfeit their payments, they knowingly and willfully ignored the same and harvested the wheat in violation of the contract, apparently electing what they believed to be the most profitable course of conduct.

■ Plaintiffs also contend they did not violate the contract willfully for they had "a good faith belief that they would not be violating the statute because the contract was void and of no effect because Mrs. Reimann had not signed". However, the evidence is insufficient to support this contention, and the Court does not believe they ever entertained such a technical legal conclusion as a possible means of escaping their responsibilities under the contract until after the penalty was assessed and they obtained legal advice.

■ As a final argument plaintiffs urge that if the contract is valid, their violation warranted termination of the contract, hence, they request the Court to terminate the contract as of the date of violation. They contend Section 1831(d), 7 U.S.C.A. of the Soil Bank Act, properly construed, compels its termination. The Court's jurisdiction under this statute is very limited. It provides for judicial review only to the extent of determining "whether there has been a violation which would warrant termination of the contract". United States v. Maxwell, 8 Cir., 1960, 278 F.2d 206, 208. The Court does not believe that it may properly terminate the contract even if such a termination is warranted in view of its limited jurisdiction. Furthermore, the Court questions plaintiffs' right to prosecute their action under Section 1831(d), supra, when they did not seek review of the question which this Court may properly consider, but, in fact, conceded that their violation was sufficient to warrant termination. The government apparently acquiesced in this procedure for they did not impose any objections thereto, but inasmuch as the government's counterclaim compelled plaintiffs to re-allege the substance of their complaint as defenses, the issues raised by plaintiffs' initial pleadings were ultimately properly presented for the Court's determination.

Accordingly, it is the opinion of this Court that the relief prayed for in plaintiffs' complaint should be denied and that judgment be entered in favor of the defendant and against the plaintiffs on defendant's counter-claim in the sum of $2,975.60.

Counsel for the defendant shall prepare Findings of Fact, Conclusions of Law, and a proposed Judgment, serve copies of the same on counsel for the plaintiffs and submit the originals to the Court.