COUNTRYSIDE DEVELOPERS, INC., APPELLANT,
v. MICHAEL AND NANCY PETERSON, APPELLEES.

620 N.W.2d 124

Filed December 12, 2000.   No. A-00-046.

Vikki S. Stamm, of Ross, Schroeder & Romatzke, for appellant.

Larry W. Beucke, of Parker, Grossart, Bahensky & Beucke, for appellees.

HANNON, SIEVERS, and MOORE, Judges.

HANNON, Judge.

## INTRODUCTION

Michael and Nancy Peterson (Petersons) own a lot in Countryside Acres Addition in Elm Creek, Nebraska, and the lots therein are restricted by covenants, which, inter alia, provide that no building shall be erected on any lot other than one detached single-family dwelling and a private garage for not more than two cars. Petersons were constructing two outbuildings on their lot, and Countryside Development, Inc. (Countryside), filed this action for a declaration that the covenants prevented Petersons' construction. The covenants provide that a majority of the lot owners can amend the covenants, and Petersons attempted to do so before the action was commenced and attempted to supplement the covenants after the action was filed. Countryside asked for a declaration

that the covenants prevented Petersons' construction, and Petersons asked for dismissal of the action. The issue was whether the amendment to the covenants which Petersons initiated complied with the covenants' amendment provision which required a "majority of the then owners" to sign the amendment when two of the signatures did not include the signing lot owners' spouses' signatures and when five of the lots listed on the amendment contained insufficient legal descriptions. The trial court determined that the amendment was effective and granted Petersons' motion for summary judgment and dismissed the case. We conclude the amendment was effective and affirm.

## SUMMARY OF EVIDENCE

Countryside is a Nebraska corporation which was the original owner and developer of Countryside Acres Addition in the village of Elm Creek, Buffalo County, Nebraska. Countryside now owns Lot 12, Block 1, and Petersons own Lot 11, Block 1, in the addition. The remaining lots are all owned by other citizens. Some of the lots are owned in part by one owner and in part by another.

Countryside Acres Addition contains 16 lots on two blocks of land. The applicable restrictive covenants were filed in May 1970, and they were amended in June 1975. The existence of the covenants and of the 1975 amendment are not questioned.

Paragraph 1 in the original restrictive covenants provides, "No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than two cars." Petersons filed a "Second Amendment to Agreement for Protective Covenants . . ." with the Buffalo County register of deeds in August 1999. The term "Second Amendment" is intended to distinguish the amendment Petersons obtained from the 1975 amendment. We shall shorten the phraseology by referring to the amendment in question as "the Amendment." The Amendment would change the above-quoted provision to read: " 'No lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any lot other than one (1) detached single-family dwelling not to

exceed two stories in height and two (2) out-buildings.' " The Amendment changes the phrase "and a private garage for not more than two cars" to read "and two (2) out-buildings." The covenants provide that they are binding for 25 years and are automatically extended for successive 10-year periods, "unless an instrument signed by *the then owner of the majority of the lots* has been recorded, agreeing to change said covenants in whole or in part." (Emphasis supplied.) The "General Provisions" section in the same document provides:

> These covenants are to run with the land and shall be binding on all parties and . . . shall be automatically extended for successive periods of ten years, unless an instrument signed by *a majority of the then owners of the lots* has been recorded, agreeing to change said covenants in whole or in part.

(Emphasis supplied.) Petersons began building two steel buildings on their lot in the summer of 1999. Countryside sent Petersons notice informing them that one of the structures they were building was in violation of the 1970 covenants and the 1975 amendment and ordered them to cease and desist construction of the building. The Amendment was filed by Petersons on August 4, 1999.

On September 1, 1999, Countryside filed a "Petition for Declaratory Judgment," alleging that the terms of the covenants were applicable, that Petersons had begun constructing a building in violation of the covenants, that the Amendment "purports to amend" the covenants, and that the Amendment was ineffective because it did not comply with the "requirement of a majority of signatures" to change the covenants. Countryside prayed for a declaratory judgment that Petersons were in violation of the original covenants and that the Amendment was invalid. Petersons' answer admitted that they were constructing buildings that would violate the unchanged covenants, but alleged the validity of the Amendment, and prayed that Countryside's petition be dismissed.

Petersons then filed a motion for summary judgment, alleging that there was no genuine issue of material fact as to the validity of the covenants and that Petersons were entitled to judgment as a matter of law.

In an answer to Petersons' interrogatories, Countryside stated that the Amendment was invalid because it did not contain the signatures of two of the lot owners' spouses and because the legal description of five lots was not accurate. Petersons then filed a supplement to the Amendment, which contained the signatures of the two spouses that were not included in the Amendment.

After a hearing on Petersons' summary judgment motion, the trial court found that the 16 lots had a total of 28 owners and 16 of the lot owners had executed the covenants and that therefore the requirement that amendments be signed by a "majority of the owners of the lots" was satisfied. The court further found that any errors in the legal descriptions of the lots in the Amendment could be cured by reference to the actual property deeds and that the Amendment as filed was valid. The court granted Petersons' motion for summary judgment and dismissed Countryside's motion for declaratory judgment.

## ASSIGNMENTS OF ERROR

Countryside alleges, restated, that the trial court erred (1) in finding that a majority of land owners had signed the Amendment to the covenants, (2) in finding that deficient legal descriptions in the Amendment could be cured by reference to the deeds, (3) in failing to find that Petersons' supplement to the Amendment was an admission that they had failed to comply with the requirements of the original covenants, and (4) in sustaining Petersons' motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Keller v. Bones*, 260 Neb. 202, 615 N.W.2d 883 (2000).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Kulhanek v. Union Pacific RR.*, 8 Neb. App. 564, 598 N.W.2d 67 (1999).

## ANALYSIS

*Signatures of Spouses.*

Countryside argues that a genuine issue of material fact exists as to the interpretation of the restrictive covenants because the signatures on the Amendment for two of the lots do not contain the signature of the signer's spouse. It does not argue that the two provisions for amendment contained in the original covenants are ambiguous, rather, that the lack of spousal signatures for two of the lots renders the signing spouse's signature void for consideration in the majority. Countryside cites no authority which requires a nonowning spouse to sign a modification of a covenant in order to make the owner's assent valid. We think Countryside's position must be considered in light of the Nebraska laws protecting the homestead. Since the real estate in Countryside Acres Addition consists of residential lots, we will assume that the lots are the homesteads of the signing owners.

Neb. Rev. Stat. § 40-104 (Reissue 1998) provides in part: "The homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife, except as otherwise hereinafter provided." The question is whether an amendment to restrictive covenants is an "encumbrance" on the homestead within the meaning of § 40-104 and thus requires the signature of both spouses to be validly executed. The effect of this statute is to invalidate any conveyance or encumbrance of homesteaded real estate that is not both executed and acknowledged by both husband and wife. *Landon v. Pettijohn*, 231 Neb. 837, 438 N.W.2d 757 (1989).

The Nebraska Supreme Court has held: "An encumbrance, within the meaning of a covenant against encumbrances, is 'every right to, or interest in, the land, to the diminution in value of the estate, but consistent with the passage of the fee by the conveyance.'" *Omega Chemical Co. v. Rogers*, 246 Neb.

935, 940-41, 524 N.W.2d 330, 334 (1994), quoting *Chapman v. Kimball*, 7 Neb. 399 (1878). Other jurisdictions use a similar definition for "encumbrance." In *Reimann v. United States*, 196 F. Supp. 134 (Idaho 1961), the court used a similar definition of encumbrance and found that for purposes of an Idaho statute which prohibited a husband from encumbering community realty unless his wife joined him in executing the instrument, a soil bank conservation reserve contract with the United States was not an encumbrance. The court explained: "It is true . . . that the owner's use of the land included in the contract is substantially curtailed by government regulations. However, it is questionable whether such regulations constitute an interest in the land which subsists in third persons 'to the diminution of the value of the land'." *Id.* at 136.

In the instant case, while the covenants curtail the owners' use of the land and bind future owners of the lots, they are not a right to or an interest in the land which contributes to a decrease in the value of the lots. The Amendment actually makes the original covenants less restrictive. We are unaware of any authority which suggests such an amendment to covenants is an encumbrance within the meaning of a homestead statute. We hold that the Amendment to the restrictive covenants is not an encumbrance within the meaning of § 40-104 and that therefore the signatures of the nonsigning spouses were not necessary to validly execute the Amendment.

Further, even if we found that the spousal signatures were necessary, Petersons filed a "Supplement to Second Amendment to Agreement for Protective Covenants . . ." on September 28, 1999, which was signed and acknowledged by two spouses who had not signed the Amendment. The two spouses had signed the covenant before the hearing on the motion for summary judgment. The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand, not at the beginning of the litigation, but at the time the decree is entered. *Wischmann v. Raikes*, 168 Neb. 728, 97 N.W.2d 551 (1959).

*Count of Signatures.*

Countryside does not dispute the court's method in calculating whether the majority signature requirement was met, only

that some of those signatures were invalid. Neither party disputes who the actual owners of the lots are. Because we find that the signature of the signer's spouse is not required to validly execute the covenants, either provision for amendment as stated in the original covenants results in there being a majority of signatures in favor of the Amendment. The Amendment contained a majority of signatures using either provision; thus, there was no genuine issue of material fact as to the proper number of signatures.

*Property Descriptions.*

Countryside next argues that errors in five lot descriptions in the Amendment render the covenants invalid; however, Countryside does not explain how the descriptions are inadequate. We do observe that in the Amendment, the legal description of the lot or lots each signer owns is stated immediately above the signature line. The evidence contains a stipulation showing who actually owns each lot and which part of each lot he or she owns. We know that the legal descriptions given on the Amendment for the five owners of which Countryside complains are either incomplete because (1) the description states that the owners own a part or "the balance" of a given lot or (2) the description includes slightly less real estate than the deeds show they own. This error can be explained by the observation that the complete legal descriptions are long and that the descriptions on the Amendment are two lines of text or less. The alleged error is really that the descriptions given were incomplete. The parties stipulated as to who actually owned the various lots by introducing the deeds under which the owners took title. There is no dispute as to who the owners were or which owner and spouses signed the Amendment and which did not. There is no requirement in the original covenants that the ownership of the signing and even nonsigning owners be listed on any future amendment. The only function of such a list is to assist anyone checking the record in determining the validity of the Amendment. Clearly, the placing of some incomplete description could have no effect on the validity of the Amendment. The trial court noted that "[t]he legal descriptions . . . are solely for the purpose of establishing an ownership inter-

est and the propriety of the person signing the agreements to be considered owners." We agree.

Countryside's remaining assignment of error essentially alleges that the trial court "failed to find" that Petersons' filing of the supplement to the covenants constituted an admission that they did not comply with the original covenants. As we have said, equity cases are tried on the facts that exist at the time of the trial. *Wischmann v. Raikes, supra.* The Amendment contained a majority of signatures at the time of the hearing on Petersons' motion for summary judgment; therefore, it is unnecessary for us to address Countryside's remaining assignment of error.

## CONCLUSION

The evidence adduced by Petersons establishes without factual dispute that the restrictive covenants for Countryside Acres Addition were validly amended to allow construction of Petersons' building. We therefore affirm the order of the district court granting Petersons' summary judgment and dismissing Countryside's motion for declaratory judgment.

AFFIRMED.