FRED BRECI ET AL., APPELLANTS AND CROSS-APPELLEES, V.
ST. PAUL MERCURY INSURANCE COMPANY, APPELLEE AND
CROSS-APPELLANT, AND UNION PACIFIC STREAMLINER
FEDERAL CREDIT UNION, INTERVENOR-APPELLANT
AND CROSS-APPELLEE.

___ N.W.2d ___

Filed July 25, 2014.    No. S-12-983.

1. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
2. **Summary Judgment: Final Orders: Appeal and Error.** A denial of a motion for summary judgment is an interlocutory order, not a final order, and therefore not appealable.
3. **Pleadings: Judgments: Appeal and Error.** A motion to alter or amend a judgment is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion.
4. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
5. **Declaratory Judgments.** In Nebraska, a party may not simply move the court for a declaratory judgment.
6. **Declaratory Judgments: Trial.** Issues of fact in a declaratory judgment action may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.
7. **Summary Judgment: Proof.** The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.
8. **Pleadings: Appeal and Error.** Permission to amend pleadings is addressed to the discretion of the trial court; absent an abuse of discretion, the trial court's decision will be affirmed.
9. **Pleadings.** Generally, leave to amend a party's pleading shall be freely given when justice so requires.
10. **Equity: Estoppel.** The doctrine of equitable estoppel applies where, as a result of conduct of a party upon which another person has in good faith relied to his detriment, the acting party is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed.
11. **Insurance: Estoppel.** The doctrine of mending one's hold generally has no application to matters relating to insurance coverage.
12. ____: ____. Estoppel cannot be invoked to expand the scope of coverage of an insurance contract absent a showing of detrimental good faith reliance upon statements or conduct of the party against whom estoppel is invoked which reasonably led an insured to believe coverage was present.

13. ____: ____. There is a widely recognized exception to the general rule that estoppel cannot be used to expand the scope of insurance coverage. Under the exception, when an insurance company assumes the defense of an action against its insured, without reservation of rights, and with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of noncoverage.

14. **Insurance: Estoppel: Proof.** The exception to the general estoppel rule applies when an insured is able to show (1) that the insurer had sufficient knowledge of facts or circumstances indicating noncoverage, (2) that the insurer assumed or continued defense of the insured without obtaining an effective reservation of rights agreement, and (3) that the insured suffered some type of harm or prejudice.

15. **Pretrial Procedure: Appeal and Error.** Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.

16. **Pretrial Procedure: Proof: Appeal and Error.** The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion.

17. **Motions for Continuance: Appeal and Error.** A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.

18. **Insurance: Contracts.** An insurance policy is a contract, and when the facts are undisputed, whether or not a claimed coverage exclusion applies is a matter of law.

19. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Thomas M. White, C. Thomas White, and Amy S. Jorgensen, of White & Jorgensen, for appellants and intervenor-appellant.

Thomas A. Grennan and Abbie M. Schurman, of Gross & Welch, P.C., L.L.O., and J. Price Collins and Thomas M. Spitaletto, of Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

CASSEL, J.

# I. INTRODUCTION

Former members of a credit union's board of directors, after having been sued by the credit union, sought a declaratory

judgment that an insurance policy covered the credit union's claims. The district court first held in favor of the former directors, but reconsidered and later granted summary judgment to the insurer. While reconsideration was pending, the former directors settled with the credit union. On appeal, we resolve two broad issues. First, because the former directors did not establish that they were entitled to summary or declaratory judgment, the court did not abuse its discretion in vacating its initial judgment. Second, because the settlement potentially gave rise to new policy-based defenses that were not barred by equitable estoppel, the court did not abuse its discretion in permitting an amended answer. We affirm the court's summary judgment for the insurer.

## II. BACKGROUND

### 1. FACTUAL BACKGROUND

#### (a) Credit Union

On February 16, 2006, the National Credit Union Administration (NCUA) placed Union Pacific Streamliner Federal Credit Union (credit union), a federally chartered credit union, under conservatorship. The conservatorship revoked the authority of the credit union's board of directors, which then included Fred Breci, William Gallo, Henry Kammerer, Michael Kros, Carl Launer, Steven Slater, and S. Anthony Siahpush (collectively former directors).

NCUA had previously recommended conservatorship for a number of reasons, including "[i]nsider abuse and preferential treatment towards certain members of the . . . board of directors." According to the recommendation, specific instances of preferential treatment included leasing office space in a building owned by a director and obtaining engineering and construction assistance from the director's firm.

#### (b) Insurance Policy

On September 12, 2006, the credit union signed an application for an insurance policy. St. Paul Mercury Insurance Company (St. Paul) later issued a policy effective from November 18, 2006, through November 18, 2009 (Policy). The

management liability insuring agreement had a limit of liability of $2 million and provided directors and officers individual coverage. The Policy covered only claims first made during the policy period.

The Policy specifically defined several terms, which we set forth using the style of the Policy:

• "**Insured**" was defined to include both "the Insured Persons" and "the Company, except the Company shall not be an Insured with respect to the **Directors and Officers Individual Coverage**."

• "**Insured Persons**" was defined to include "Directors or Officers."

• "**Company**" was defined as "any entity named in the Declarations and its Subsidiaries." The credit union was the entity named in the declarations.

• "**Claim**" included "a civil proceeding against any Insured commenced by the service of a complaint or similar pleading" which was "on account of a Wrongful Act."

• "**Wrongful Act**" included a "Management Practices Act."

• "**Management Practices Act**" included any "breach of duty actually or allegedly committed or attempted by any Insured Person in their capacity as such."

### (c) Credit Union's Lawsuit
### Against Directors

On June 15, 2007, the credit union sued the former directors and two businesses affiliated with one of the former directors. Its amended complaint alleged that the former directors failed to exercise the ordinary care and prudent judgment required of directors, thereby causing injury and financial loss. The complaint set forth the following acts by the former directors:

• commissioning, without competitive bidding, an engineering study by a company owned and controlled by one of the former directors;

• accepting, without seeking competitive bids, a proposal to name the company of one of the former directors as general contractor of an expansion project; and

• leasing space, without exploring options elsewhere, in a building owned by a company in which one of the former directors was a majority owner.

The credit union sought general and special damages resulting from the breaches of the former directors' fiduciary duty.

### (d) Claim on Policy

In July 2007, the former directors submitted the credit union's lawsuit to St. Paul, seeking coverage under the Policy.

In a January 21, 2008, letter to the former directors, St. Paul acknowledged receipt of the lawsuit and described coverage under the Policy. The letter discussed the following:

• There was a retention per claim that must be exhausted before St. Paul advanced defense costs or contributed toward any loss.

• Certain definitions were contained in the Policy, pursuant to which the credit union was the "Company," the former directors were "Insured Persons," the complaint was a "Claim," and the allegations of breach of fiduciary duty may meet the definition of "Management Practices Act."

• The Policy remained controlling in regard to any determination of coverage, and any coverage analysis in the letter was subject to change as the claim developed and further information was obtained.

• St. Paul reserved all rights under the Policy to rely upon and enforce additional terms of the Policy and to disclaim coverage on alternative bases.

On February 16, 2009, St. Paul sent a letter to the former directors, stating that it would not defend or indemnify the former directors for the credit union's lawsuit against them. The letter stated that because the former directors were "Insured Persons" and the credit union was an "Insured" under the Policy, coverage was precluded under a subsection of the Policy designated "Exclusions Applicable to All Insuring Agreements and to All Loss," which stated in part that "[t]he Insurer shall not be liable for Loss on account of any Claim made against any Insured . . . brought or maintained by or on behalf of any Insured or Company in any capacity."

## 2. PROCEDURAL BACKGROUND

### (a) Complaint, Answer, and Intervention

On April 9, 2009, the former directors sued St. Paul. They sought a declaratory judgment that they were entitled to coverage under the Policy, that St. Paul was obligated to them for the cost of defending the action brought by the credit union, and that St. Paul was obligated to provide coverage for any damages that might be awarded by a court for the complaint brought by the credit union.

In St. Paul's answer, it alleged, among other things, that coverage for the credit union's lawsuit against the former directors was barred under an exclusion in the Policy, because the former directors were "Insureds" under the Policy and the lawsuit was brought by the credit union, which was also an "Insured" under the Policy.

The credit union later intervened in the former directors' lawsuit against St. Paul. It requested an order declaring that there was coverage under the Policy and that St. Paul would be required to pay the judgment up to the limits of coverage if a judgment in the credit union's lawsuit against the former directors was entered in favor of the credit union.

### (b) Orders to Mediate

Shortly after the former directors sued St. Paul, the district court entered an order both in the credit union's lawsuit against the former directors and in the instant case, referring each case to mediation and stating that "all parties shall attend and participate in the mediation." After the initial mediation date, St. Paul did not participate in further negotiations.

### (c) First Motion for Summary Judgment and Motion for Declaratory Judgment

St. Paul and the former directors each filed a motion seeking judgment. St. Paul moved for summary judgment, alleging that the Policy did not provide coverage for the claims in the credit union's lawsuit against the former directors and that St. Paul was not obligated to advance or reimburse the

defense costs incurred by the former directors in that lawsuit or to otherwise indemnify them. The former directors filed a "Motion for Declaratory Judgment" and asked for an order declaring their rights under the Policy.

On April 20, 2010, the district court entered judgment, styled as an order, denying St. Paul's motion for summary judgment and granting the former directors' motion for declaratory judgment. The court determined that the "Insured v. Insured" exclusion did not apply, because the credit union was not an "Insured" under the "Directors and Officers Individual Coverage" section of the management liability insuring agreement.

St. Paul timely filed a motion to alter or amend. It asserted several grounds in support of its motion and requested that the court alter or amend its order or, in the alternative, limit the order solely to the applicability of the "Insured v. Insured" exclusion and leave open for resolution the remaining issues relating to other defenses.

### (d) Settlement and Amended Answer

After weeks of negotiations through the mediator, the former directors settled the credit union's lawsuit against them. The settlement agreement provided that the former directors would pay $155,000 to the credit union, that there would be a confession of judgment by certain former directors, and that there would be an assignment of interest.

On April 26, 2010—6 days after the filing of the court's judgment denying St. Paul's motion for summary judgment and granting the former directors' motion for declaratory judgment—the confession of judgment was filed. It provided that five of the former directors confessed that judgment of $2 million should be entered against them in favor of the credit union. Under the assignment of claims, the former directors transferred to the credit union their interests in the instant litigation against St. Paul. A covenant not to execute stated that the credit union "will not execute on, or otherwise seek to enforce, the Judgment entered against the [former directors] in this matter by confession, except and to the extent of any

right, title, claim or interest of any type or kind that the [former directors] have . . . against St. Paul."

On May 5, 2010—9 days after the confession of judgment was filed and while St. Paul's motion to alter or amend the April judgment was still pending—St. Paul moved for leave to file an amended answer. St. Paul alleged that the settlement of the credit union's lawsuit raised new issues and new defenses under the Policy that were not known to St. Paul or otherwise did not exist at the time the court considered the motion for summary judgment and motion for declaratory judgment. The court granted the motion.

St. Paul subsequently filed its amended answer. It alleged that the settlement between some of the former directors and the credit union constituted a fraudulent and collusive effort to obtain the Policy's limits of liability. St. Paul pointed to various provisions of the Policy and asserted numerous reasons why the Policy did not provide coverage under the circumstances. The additional defenses included the following:

• The former directors were not legally obligated to pay the confessed judgment.
• The confessed judgment was not on account of a "Claim" for a "Management Practices Act."
• The confessed judgment was not on account of "Wrongful Acts."
• The former directors violated the "Defense and Settlement" provision of the Policy.
• Some of the former directors violated the Policy's "Duty of the Insureds to Defend" provision.
• Misrepresentations or omissions were made in connection with the application for the Policy.
• The credit union's lawsuit against the former directors did not constitute a claim first made during the policy period.

### (e) September 2011 Order

On September 15, 2011, the court ruled on St. Paul's motion to alter or amend. The court stated:

> I clearly erred in awarding the [former directors] a declaratory judgment, and even if it was to be considered as a motion for partial summary judgment, the other parties

did not have an opportunity to present evidence in opposition, and that portion of the April 20, 2010 order should be vacated.

The court granted in part St. Paul's motion to alter or amend and vacated that portion of the judgment granting declaratory judgment. The court denied St. Paul's motion with respect to the denial of St. Paul's motion for summary judgment.

### (f) Second Motion for Summary Judgment, Amended Complaint, and Motion to Postpone

In April 2012, St. Paul filed a second motion for summary judgment. It alleged that the Policy did not provide coverage for the credit union's lawsuit against the former directors for the following reasons: (1) The credit union's lawsuit constituted a claim first made prior to the policy period and was therefore precluded from coverage; (2) the regulatory claims exclusion barred coverage; (3) the credit union's lawsuit arose out of facts and circumstances known to the credit union and the former directors prior to issuance of the Policy, and the application exclusion therefore precluded coverage; and (4) the former directors were not legally obligated to pay the judgment, but, rather, were absolved from payment such that the judgment did not satisfy the insuring agreement of the Policy, nor did it constitute a covered loss.

On May 11, 2012, the credit union filed a second amended complaint and cross-claim against St. Paul. It alleged that on or about October 1, 2009, the parties began to mediate the claims and that St. Paul "attended approximately the first half day of mediation but refused to make any additional offers from its initial and minimal offer. St. Paul . . . then refused to participate in any further mediation." The credit union alleged that as assignee of the rights of the former directors, St. Paul violated its duty of good faith to the former directors and to the credit union in a number of ways. The credit union sought damages of $2 million.

Also on May 11, 2012, the credit union filed a "motion for postponement of summary judgment hearing," seeking to

postpone the June 7 hearing date. In support of its motion, the credit union alleged that the motion for summary judgment was premature in light of its amended complaint and cross-claim and that if the court granted any part of a pending motion to compel, the credit union might want to submit such information at the summary judgment hearing. The court denied the motion to compel and the motion for postponement.

### 3. District Court's Decision

On September 28, 2012, the court entered its final judgment. The court granted St. Paul's second motion for summary judgment, dismissed the complaint of the former directors, and dismissed the credit union's complaint in intervention. The court made the following determinations:

• St. Paul was not estopped from raising additional defenses in its amended answer, because St. Paul's January 2008 letter gave the former directors notice that the terms, conditions, and exclusions of the Policy controlled; the coverage analysis was subject to change pending further information; and St. Paul reserved its rights under the Policy.

• The claim arose prior to the policy period, because the allegations in the credit union's lawsuit against the former directors were identical to those alleged in the NCUA proceeding, which was prior to the November 18, 2006, effective date of the Policy.

• Even if the credit union's lawsuit against the former directors fell within the policy period, coverage would be barred by the regulatory claims exclusion in the management liability insuring agreement, because the claim arose out of or was attributable to the NCUA proceeding, which was brought by the NCUA.

The former directors and the credit union (collectively credit union parties) timely appealed, and St. Paul filed a cross-appeal. We moved the case to our docket under our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## III. ASSIGNMENTS OF ERROR

The credit union parties assign, restated and consolidated, that the district court erred in (1) vacating its order granting declaratory judgment to the former directors, (2) allowing St. Paul to amend its pleadings and assert new defenses, and (3) overruling the credit union parties' motion for further discovery and the credit union's motion for a postponement of the summary judgment hearing.

The credit union parties also assign that the court erred in granting St. Paul's second motion for summary judgment, but their brief does not specifically argue the issue. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[2] The credit union parties state in their brief, "As it is the [credit union parties'] primary contention that the District Court should not have permitted [St. Paul] to assert the new defenses in its Amended Answer after a determinative ruling by the District Court, this brief will not address the merits of those defenses."[3] Thus, we do not consider this assignment of error.

On cross-appeal, St. Paul assigns that the district court erred in denying its first motion for summary judgment and in denying its motion to alter or amend the April 2010 judgment when the "Company v. Insured" exclusion barred coverage for the credit union's lawsuit against the former directors.

## IV. ANALYSIS

### 1. St. Paul's Jurisdictional Argument

[1] St. Paul asserts that the credit union parties' appeal "suffers from fatal jurisdictional deficiencies."[4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter

---

[2] *Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 844 N.W.2d 264 (2014).

[3] Brief for appellants at 12.

[4] Brief for appellee at 10.

before it.[5] St. Paul points out that the credit union parties do not challenge the coverage defenses upon which the final judgment was based. And St. Paul argues that the discretionary orders which the credit union parties challenge do not bear on the correctness of the district court's final judgment.

The credit union parties properly waited until entry of final judgment to appeal. The orders the credit union parties are challenging—the order vacating declaratory judgment, the order allowing St. Paul to file an amended answer, the order denying their motion to compel, and the order denying a continuance—were nonfinal and not immediately appealable at the time of entry.[6] Contrary to St. Paul's assertion, these orders all bear on the correctness of the court's entry of summary judgment, because a reversal on any of the nonfinal orders would require us to reverse, vacate, or modify the final judgment. Accordingly, we now have jurisdiction over the various interlocutory orders at issue.

## 2. Credit Union Parties'
### Jurisdictional Argument

[2] The credit union parties claim that we lack jurisdiction to consider the errors assigned on cross-appeal. The cross-appeal is directed to the district court's denial of St. Paul's first motion for summary judgment and the denial of St. Paul's motion to alter or amend that judgment. A denial of a motion for summary judgment is an interlocutory order, not a final order, and therefore not appealable.[7] And because the denial of St. Paul's first motion for summary judgment was not appealable at the time of entry, St. Paul properly waited until entry of final judgment to challenge the court's ruling on the earlier interlocutory order. Thus, we also have jurisdiction over the orders challenged on cross-appeal.

---

[5] *Deleon v. Reinke Mfg. Co.*, 287 Neb. 419, 843 N.W.2d 601 (2014).

[6] See, e.g., *Connelly v. City of Omaha*, 278 Neb. 311, 769 N.W.2d 394 (2009) (to be final, order must ordinarily dispose of whole merits of case); *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989) (discovery order can be reviewed on appeal from final judgment).

[7] *Cerny v. Todco Barricade Co.*, 273 Neb. 800, 733 N.W.2d 877 (2007).

### 3. Vacating Prior Declaratory
### Judgment

### (a) Claim

The credit union parties first argue that the district court abused its discretion by vacating its prior judgment granting the former directors declaratory judgment. In vacating that portion of the judgment, the court stated that it "clearly erred" in awarding a declaratory judgment and that "even if it was to be considered as a motion for partial summary judgment, the other parties did not have an opportunity to present evidence in opposition."

### (b) Standard of Review

[3,4] A motion to alter or amend a judgment is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion.[8] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[9]

### (c) Discussion

The credit union parties focus on the second part of the court's statement and point out that St. Paul had the opportunity to—and did—present evidence in opposition to the motion. But the real problem for the credit union parties lies with the court's recognition that it erred in awarding a declaratory judgment under these circumstances.

[5] In Nebraska, a party may not simply move the court for a declaratory judgment. The former directors filed both a complaint for declaratory judgment and a "motion for declaratory judgment." The order at issue in this assignment of error vacated the portion of the April 2010 judgment purporting to grant the motion for declaratory judgment. Although a "motion

---

[8] *Russell v. Clarke*, 15 Neb. App. 221, 724 N.W.2d 840 (2006).

[9] *Fox v. Whitbeck*, 286 Neb. 134, 835 N.W.2d 638 (2013).

for declaratory judgment" has been referenced in a few published opinions of this court[10] and one such opinion of the Nebraska Court of Appeals,[11] no such summary proceeding is recognized in Nebraska.

[6] Issues of fact in a declaratory judgment action may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.[12] When there is no genuine issue of material fact, a motion for summary judgment may be appropriate.[13] A party may also move for judgment on the pleadings, but if matters outside the pleadings are received by the court—as was the case here—the motion shall be treated as one for summary judgment.[14]

[7] To the extent the former directors may have been seeking summary judgment, they failed to prove entitlement to judgment as a matter of law. The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.[15] The district court's determination that the "Insured v. Insured" exclusion was inapplicable did not resolve other issues presented by the pleadings. The former directors were not entitled to summary judgment or declaratory judgment.

---

[10] *Kubicek v. City of Lincoln*, 265 Neb. 521, 658 N.W.2d 291 (2003); *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993); *State v. Green*, 236 Neb. 33, 458 N.W.2d 472 (1990), *overruled on other grounds, State v. Tingle*, 239 Neb. 558, 477 N.W.2d 544 (1991); *Stremmel v. Kinney*, 226 Neb. 555, 412 N.W.2d 834 (1987).

[11] *Countryside Developers v. Peterson*, 9 Neb. App. 798, 620 N.W.2d 124 (2000).

[12] Neb. Rev. Stat. § 25-21,157 (Reissue 2008).

[13] See *C.E. v. Prairie Fields Family Medicine*, 287 Neb. 667, 844 N.W.2d 56 (2014).

[14] See Neb. Ct. R. Pldg. § 6-1112(c).

[15] *Durre v. Wilkinson Development*, 285 Neb. 880, 830 N.W.2d 72 (2013).

### (d) Resolution

We conclude that the district court did not abuse its discretion by granting St. Paul's motion to alter or amend in part to vacate the entry of declaratory judgment.

### 4. Allowing Amendment to Raise New Defenses

### (a) Claim

The credit union parties' chief complaint on appeal concerns the district court's decision to permit St. Paul to assert new defenses in its amended answer. They argue that St. Paul should be estopped from raising new defenses.

### (b) Standard of Review

[8,9] Permission to amend pleadings is addressed to the discretion of the trial court; absent an abuse of discretion, the trial court's decision will be affirmed.[16] Generally, leave to amend a party's pleading shall be freely given when justice so requires.[17]

### (c) Discussion

[10] The doctrine of equitable estoppel applies where, as a result of conduct of a party upon which another person has in good faith relied to his detriment, the acting party is absolutely precluded, both at law and in equity, from asserting rights which might have otherwise existed.[18] The credit union parties argue that they detrimentally relied on St. Paul's defenses asserted in the initial answer when agreeing to a settlement of the credit union's lawsuit against the former directors.

[11,12] We first reject the credit union parties' argument that the equitable doctrine of mending one's hold has estopped St. Paul from asserting additional defenses. We have concluded that the doctrine of mending one's hold generally "'has

---

[16] *Mutual of Omaha Bank v. Murante*, 285 Neb. 747, 829 N.W.2d 676 (2013).

[17] See Neb. Ct. R. Pldg. § 6-1115(a).

[18] *Burns v. Nielsen*, 273 Neb. 724, 732 N.W.2d 640 (2007).

no application to matters relating to coverage.'"[19] And we have stated that "'estoppel cannot be invoked to expand the scope of coverage of an insurance contract absent a showing of detrimental good faith reliance upon statements or conduct of the party against whom estoppel is invoked which reasonably led an insured to believe coverage was present.'"[20]

We have determined that the doctrines of mending one's hold and estoppel do not apply when an insured has notice that other defenses could be asserted by an insurer. In *Sayah v. Metropolitan Prop. & Cas. Ins. Co.*,[21] an insurer initially denied a claim because of inconsistencies in the report of the loss compared with the physical evidence, but later denied the claim upon the basis that the insureds did not have an insurable interest in the vehicle. The insureds argued that the doctrine of mending one's hold prevented the insurer from raising the insurable interest defense, but we determined that the insurer was not estopped from asserting that defense. We reasoned that the insureds did not suffer detrimental reliance, because they had notice that the insurer could assert the defense: (1) The insurance policy addressed the insurable interest issue and provided no coverage if an insured did not have an insurable interest in the covered vehicle, and (2) the insurer expressly reserved the right to assert additional defenses in its denial letter.

Like the insureds in *Sayah*, the former directors did not suffer detrimental reliance, because they had notice that St. Paul could assert the additional defenses set forth in its amended answer. First, the additional defenses raised by St. Paul to support its denial of coverage were based on the terms, conditions, and exclusions of the Policy. Second, St. Paul explicitly reserved the right to assert additional defenses based on the Policy in its January 2008 letter to the former directors and in its original answer. Thus, like the insureds in *Sayah*, the former

[19] *Sayah v. Metropolitan Prop. & Cas. Ins. Co.*, 273 Neb. 744, 749, 733 N.W.2d 192, 197 (2007), quoting *Design Data Corp. v. Maryland Cas. Co.*, 243 Neb. 945, 503 N.W.2d 552 (1993).

[20] *Id.*

[21] *Sayah, supra* note 19.

directors did not suffer detrimental reliance when St. Paul amended its answer to allege other exclusions from coverage set forth in the Policy.

[13,14] There is a widely recognized exception to the general rule that estoppel cannot be used to expand the scope of insurance coverage. Under the exception, when an insurance company assumes the defense of an action against its insured, without reservation of rights, and with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of noncoverage.[22] The exception to the general estoppel rule applies when an insured is able to show (1) that the insurer had sufficient knowledge of facts or circumstances indicating noncoverage, (2) that the insurer assumed or continued defense of the insured without obtaining an effective reservation of rights agreement, and (3) that the insured suffered some type of harm or prejudice.[23]

The exception to the general estoppel rule is not applicable. St. Paul's January 2008 letter did not explicitly state that there was coverage. It did, however, explicitly state that St. Paul's investigation and evaluation of coverage were continuing. The letter also stated:

> We expressly reserve all rights under the Policy and pursuant to applicable law to rely upon and enforce additional terms of the Policy and to disclaim coverage on alternative bases if facts become known to us which result in the application of other terms, conditions, exclusions, endorsements or other provisions of the Policy, including representations, statements, declarations and/or omissions in connection with the . . . application.

Further, St. Paul did not have the duty to defend under the express terms of the Policy, and St. Paul never assumed or controlled the defense of the credit union's lawsuit against the former directors. The January 2008 letter to the former directors noted that the former directors had the duty to defend any

---

[22] See *First United Bank v. First Am. Title Ins. Co.*, 242 Neb. 640, 496 N.W.2d 474 (1993).

[23] *Id.*

claim covered under the Policy, that the former directors had selected an attorney to represent them, and that St. Paul had the right to be consulted in advance about defense strategies and settlement negotiations—all of which were consistent with the terms of the Policy. Thus, the exception to the general estoppel rule does not apply under the circumstances of this case.

The credit union parties next argue that allowing St. Paul "to amend its pleading subsequent to an adverse ruling on a determinative motion would violate the public policy of Nebraska" because it "will severely inhibit the ability to [sic] an insured to achieve finality in litigation."[24] But because St. Paul timely filed a motion to alter or amend—which stopped the time in which to file an appeal from running—the April 2010 judgment never became subject to appeal. To the extent the credit union parties relied upon a judgment which could still have been altered by the district court or appealed to a higher court, they did so at their peril. And it was while St. Paul's motion to alter or amend was pending that St. Paul filed its amended answer. Thus, there was no "finality in litigation" at the time St. Paul filed its amended answer.

The credit union parties rely on *Darrah v. Bryan Memorial Hosp.*[25] in support of their argument that St. Paul should not have been allowed to amend its answer. In that case, after the district court granted the defendant's motion for summary judgment, the plaintiff filed a motion for reconsideration and new trial or leave to amend in order to allege specific acts of negligence. The court overruled the motion, and we determined that it was not an abuse of discretion to deny a motion to amend pleadings absent some mitigating factor which justified a party's raising new issues after a motion for summary judgment had been heard and submitted.[26] We stated that unless evidence or testimony exists in the record indicating either that a proposed claim or defense was newly discovered or that

---

[24] Brief for appellants at 30.

[25] *Darrah v. Bryan Memorial Hosp.*, 253 Neb. 710, 571 N.W.2d 783 (1998).

[26] See *id*.

counsel was unaware of the claim or defense prior to the pending action, the proposed amendment is merely a belated effort to inject issues of material fact into a proceeding where previously the pleadings revealed none.[27]

We distinguish *Darrah* from the situation at hand. Here, St. Paul promptly sought leave to amend its answer after a "newly discovered" development—the settlement of the credit union's lawsuit against the former directors. The settlement potentially raised new issues and new defenses under the Policy. Although not all of the new defenses asserted in the amended answer related to the settlement, many of them did. Thus, even though St. Paul did not seek to amend its answer until after a motion for summary judgment had been heard and submitted, the new development justified the late stage in the proceedings in which St. Paul sought to amend its answer.

### (d) Resolution

We conclude that the doctrine of mending one's hold is not applicable and that the former directors did not suffer detrimental reliance, because they had notice that St. Paul could assert additional defenses based on the Policy. We also conclude that the exception to the general rule that estoppel cannot be used to expand the scope of insurance coverage is not applicable. Because the district court's April 2010 judgment did not become appealable due to St. Paul's motion to alter or amend and because the settlement of the credit union's lawsuit against the former directors made other exclusions from coverage under the Policy potentially applicable, the district court did not abuse its discretion in allowing St. Paul to amend its answer to assert new defenses.

### 5. Motions for Discovery and Continuance

### (a) Claim

In connection with the district court's decision to allow St. Paul to file an amended answer, the credit union parties

---

[27] See *id*.

assign that the court abused its discretion by denying their motion to compel discovery and denying the credit union's motion to postpone the summary judgment hearing.

### (b) Standard of Review

[15,16] Decisions regarding discovery are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.[28] The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion.[29]

[17] A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.[30]

### (c) Discussion

[18] St. Paul's second motion for summary judgment was based on the terms of the Policy and presented a question of policy interpretation. An insurance policy is a contract, and when the facts are undisputed, whether or not a claimed coverage exclusion applies is a matter of law.[31] Because St. Paul's second motion for summary judgment could be—and was— resolved based on the language of the Policy, no additional discovery was necessary.

### (d) Resolution

We conclude that the court did not abuse its discretion in denying the motion to compel or the motion for postponement of the hearing.

### 6. St. Paul's Cross-Appeal

[19] On cross-appeal, St. Paul argues that the district court erred in denying St. Paul's first motion for summary judgment by finding that the "Company v. Insured" exclusion did not

---

[28] *U.S. Bank Nat. Assn. v. Peterson*, 284 Neb. 820, 823 N.W.2d 460 (2012).

[29] *Id.*

[30] *Gilroy v. Ryberg*, 266 Neb. 617, 667 N.W.2d 544 (2003).

[31] *Woodle v. Commonwealth Land Title Ins. Co.*, 287 Neb. 917, 844 N.W.2d 806 (2014).

apply to the claim raised in the credit union's lawsuit against the former directors and in denying its motion to alter or amend the April 2010 judgment which challenged that finding. Both of St. Paul's motions for summary judgment were based on its belief that the terms of the Policy did not provide coverage for the claims alleged in the credit union's lawsuit against the former directors. Because the credit union parties do not argue on appeal that the court erred in granting St. Paul's second motion for summary judgment, we affirm the judgment. Thus, we need not further address the cross-appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[32]

## V. CONCLUSION

We conclude the district court properly vacated its earlier judgment granting the former directors' "motion for declaratory judgment," because the former directors had not demonstrated entitlement to summary judgment or declaratory judgment. Because the settlement between the credit union parties potentially gave rise to new defenses under the Policy and because estoppel and the general exception to estoppel do not apply, the court did not abuse its discretion in allowing St. Paul to amend its answer. We further conclude that the court did not abuse its discretion in denying the motion to compel or the motion for postponement of the summary judgment hearing, because St. Paul's second motion for summary judgment could be decided based upon the language of the Policy. We therefore affirm the court's judgment.

AFFIRMED.

STEPHAN, J., not participating.

_____

[32] *Kerford Limestone Co. v. Nebraska Dept. of Rev.*, 287 Neb. 653, 844 N.W.2d 276 (2014).